**BEFORE THE UNITED STATES JUDICIAL PANEL**
**ON MULTIDISTRICT LITIGATION**

**IN RE: WELCH'S FRUITY BITES MARKETING AND SALES PRACTICES LITIGATION**

**MDL DOCKET NO. 1:26-P-53**

**MEMORANDUM OF LAW IN SUPPORT OF PIM BRANDS, INC. AND WELCH FOODS INC., A COOPERATIVE'S MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED PRETRIAL PROCEEDINGS**

**VENABLE LLP**
Daniel S. Silverman
dssilverman@venable.com
Bryan J. Weintrop
bjweintrop@venable.com
Brandon M. Stoffers
bmstoffers@venable.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Tel.: (310) 229-9900
Fax: (310) 229-9901

Melissa C. McLaughlin
mcmclaughlin@venable.com
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel.: (410) 244-7400
Fax: (410) 244-7742

Alexandra E. Deitz
aedeitz@venable.com
151 W. 42nd Street, 49th Floor
New York, NY 10036
Tel.: (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants PIM BRANDS, INC., erroneously sued in some cases as PROMOTION IN MOTION, INC. and P.I.M. BRANDS USA, INC., and WELCH FOODS INC., A COOPERATIVE*

# TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. FACTUAL BACKGROUND ........ 3

A. The Products ........ 3

B. The "Zero Sugar" Label ........ 3

III. LITIGATION BACKGROUND AND STATUS ........ 3

IV. ARGUMENT ........ 8

A. Legal Standard ........ 8

B. Transfer and Centralization Is Warranted Under 28 U.S.C. § 1407 ........ 9

1. The Subject Actions Involve Common Questions of Fact ........ 9

2. Transfer and Centralization Will Promote the Just and Efficient Conduct of the Subject Actions ........ 10

3. Transfer and Centralization Will Be for the Convenience of the Parties and Witnesses ........ 15

4. Centralization Is Necessary ........ 17

C. The Eastern District of New York Is the Appropriate Transferee District ........ 18

V. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375 (J.P.M.L. 2016) ........ 9

*In re 5-Hour Energy Mktg. and Sales Practices Litig.*, 949 F. Supp. 2d 1357 (J.P.M.L. 2013) ........ 9, 11, 15

*In re Air W. Sec. Litig.*, 384 F. Supp. 609 (J.P.M.L. 1974) ........ 9

*In re Anheuser-Busch Beer Labeling Mktg. and Sales Practices Litig.*, 949 F. Supp. 2d 1371 (J.P.M.L. 2013) ........ 11, 15

*In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379 (J.P.M.L. 2009) ........ 20

*In re Canon U.S.A., Inc., Digital Cameras Prods. Liab. Litig.*, 416 F. Supp. 2d 1369 (J.P.M.L. 2006) ........ 11

*In re Charlotte Russe, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 505 F. Supp. 2d 1377 (J.P.M.L. 2007) ........ 11

*In re Coca-Cola Products Mktg. and Sales Pracs. Litig.*, 37 F. Supp. 3d 1386 (J.P.M.L. 2014) ........ 15

*In re Cuisinart Food Processor Antitrust Litig.*, 506 F. Supp. 651 (J.P.M.L. 1981) ........ 15

*In re Enfamil Lipil Mktg. and Sales Pracs. Litig.*, 764 F. Supp. 2d 1356 (J.P.M.L. 2011) ........ 15

*In re Folgers Coffee Mktg. and Sales Pracs. Litig.*, 532 F. Supp. 3d 1416 (J.P.M.L. 2021) ........ 9

*In re Frito-Lay N. Am., Inc. 'All Natural' Litig.*, 908 F. Supp. 2d 1379 (J.P.M.L. 2012) ........ 9, 11, 15, 19

*In re Groupon, Inc., Mktg. & Sales Practices Litig.*, 787 F. Supp. 2d 1362 (J.P.M.L. 2011) ........ 19

*In re KIND LLC "All Natural" Litig.*, 118 F. Supp. 3d 1380 (J.P.M.L. 2015) ........ 9

*In re Listerine Total Care Mouthwash Mktg. and Sales Practices Litig.*,
764 F. Supp. 2d 1354 (J.P.M.L. 2011)....................11

*In re Merscorp, Inc., Real Estate Settlement Procedures Act (RESPA) Litig.*,
473 F. Supp. 2d 1379 (J.P.M.L. 2007)....................15

*In re MI Windows & Doors, Inc., Prods. Liab. Litig.*,
857 F. Supp. 2d 1374 (J.P.M.L. 2012)....................18

*In re Multidistrict Private Civ. Treble Damage Litig. Involving Plumbing Fixtures*,
308 F. Supp. 242 (J.P.M.L. 1970)....................11

*In re Oral Phenylephrine Mktg. & Sales Practices Litig.*,
709 F. Supp. 3d 1380 (J.P.M.L. 2023)....................18, 19

*In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*,
717 F. Supp. 3d 1357 (J.P.M.L. 2024)....................18

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
173 F. Supp. 2d 1377 (J.P.M.L. 2001)....................17

*In re Piper Aircraft Dist. Sys. Antitrust Litig.*,
405 F. Supp. 1402 (J.P.M.L. 1975)....................11

*In re: Protegrity Corp. & Protegrity USA, Inc., Patent Litig.*,
84 F. Supp. 3d 1380 (J.P.M.L. 2015)....................13

*In re Res. Exploration, Inc. Sec. Litig.*,
483 F. Supp. 817 (J.P.M.L. 1980)....................17

*In re Santa Fe Natural Tobacco Company Mktg. and Sales Pracs. Litig.*,
178 F. Supp. 3d 1377 (J.P.M.L. 2016)....................9

*In re Simply Orange Orange Juice Mktg. and Sales Pracs. Litig.*,
867 F. Supp. 2d 1344 (J.P.M.L. 2012)....................9

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
949 F. Supp. 2d 1369 (J.P.M.L. 2013)....................11, 15

*In re Sugar Indus. Antitrust Litig.*,
395 F. Supp. 1271 (J.P.M.L. 1975)....................11

*In re Uranium Indus. Antitrust Litig.*,
458 F. Supp. 1223 (J.P.M.L. 1978)....................15

*In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*,
176 F. Supp. 3d 1377 (J.P.M.L. 2016)....................13

*In re Visa/MasterCard Antitrust Litig.*,
295 F. Supp. 2d 1379 (J.P.M.L. 2003)....................15

*In re: Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*,
109 F. Supp. 3d 1373 (J.P.M.L. 2015)....................9

*In re Whole Foods Market, Inc. Greek Yogurt Mktg. and Sales Pracs. Litig.*,
65 F. Supp. 3d 1395 (J.P.M.L. 2014)....................9

*In re Zappos, Inc. Consumer Data Sec. Breach Litig.*,
867 F. Supp. 2d 1357 (J.P.M.L. 2012)....................11

**Statutes**

28 U.S.C. § 1407.................... *passim*

California's Consumers Legal Remedies Act....................4, 5, 6, 7

California's False Advertising Law....................4, 5, 8

California's Unfair Competition Law....................4, 5, 7

District of Columbia Consumer Protection Procedures Act....................6, 8

Illinois Consumer Fraud and Deceptive Business Practices Act....................5, 7

Massachusetts General Laws Chapter 93A....................6, 8

New York General Business Law § 349....................4, 6, 7

New York General Business Law § 350....................4, 6, 7

Oregon Unlawful Trade Practices Act § 646.608(1)(e)....................5, 8

Oregon Unlawful Trade Practices Act § 646.638....................5

**Court Rules**

Fed. R. Civ. P. 23....................17

Fed. R. Evid. 702....................13

Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Rule 6.2....................1

**Other Authorities**

David F. Herr, MULTIDISTRICT LITIGATION MANUAL § 5.24 (2014)....................12

Pursuant to 28 U.S.C. § 1407 and Rule 6.2 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML" or the "Panel"), Defendants PIM Brands, Inc., erroneously sued in some cases as Promotion In Motion, Inc. and P.I.M. Brands USA, Inc. ("PIM"), and Welch Foods Inc., A Cooperative ("Welch's" and, together with PIM, "Defendants") respectfully submit this Memorandum of Law in Support of their Motion for Transfer of the actions listed in the attached Schedule of Actions (the "Subject Actions"), and any future similar actions in federal court, for coordinated pretrial proceedings. For the reasons discussed below, the Subject Actions should be transferred to, and centralized in, the Eastern District of New York.

## I. INTRODUCTION

The Subject Actions present the quintessential circumstances warranting centralization. In a span of less than a month, ten different plaintiffs' counsel collectively filed six putative class-action complaints in federal court, one putative class-action complaint in the Superior Court of the District of Columbia, and served three pre-suit demand letters, all challenging the labeling and marketing of Welch's "Zero Sugar" Fruity Bites (the "Products") as purportedly deceptive because the Products contain the ingredient allulose – which is alleged to be a sugar. The Subject Actions presently consist of the six putative class-action complaints pending in five federal districts with a labyrinth of overlapping putative classes. Moreover, there is a seventh filed action pending in the Superior Court of the District of Columbia, which Defendants intend to remove to federal court. The three remaining demand letters threaten additional actions in New York, California, and Massachusetts.[1] The Other Related Matters are all likely to become filed federal actions, which will further entangle the overlapping putative classes. The Subject

[1] The pending D.C. Superior Court case and the three pre-suit demand letters are not yet eligible for transfer and are collectively referred to herein as the "Other Related Matters." The complaint and demand letters for the Other Related Matters are attached hereto as **Exhibits G-J**.

Actions and the Other Related Matters concern the same issues regarding the same Products and the same labels against the same Defendants: whether the "Zero Sugar" statement on the Products' labels is false or misleading because the Products contain allulose.

The six Subject Actions already span the Eastern District of New York, Southern District of California, Central District of California, District of Oregon, and Northern District of Illinois. They assert overlapping consumer-protection, warranty, fraud, misrepresentation, and unjust-enrichment claims on behalf of putative classes that overlap in a myriad of ways, including geographically and temporally. The Subject Actions will all require duplicative discovery into the same body of evidence: the Products' formulation and allulose content; testing of the Products; the function of allulose in the Products; the manufacture, packaging, marketing, pricing, distribution, and sale of the Products; the development and approval of the Products' labels; the meaning of "Zero Sugar"; consumer understanding of the Products, the label, sugar, and allulose; Defendants' compliance with labeling and disclosure regulations and how those regulations apply to the Products; and the value or purported price premium, if any, attributable to the "Zero Sugar" label.

Absent centralization, overlapping putative classes and causes of action will proceed in different courts; the parties will be forced to file separate but duplicative motions and risk inconsistent rulings, including on dispositive motions and class certification, custodians will face duplicative discovery and depositions; and the parties will retain overlapping experts regarding the same regulatory, labeling, consumer-perception, and damages issues. Further, the rapid succession of filings and demand letters confirms that additional tag-along actions are likely.

The Subject Actions are all at the beginning stages of litigation, with no responses filed to date. Centralization now will impose minimal disruption while permitting one court to establish

a coherent pretrial framework to address and minimize the significant burdens, inefficiencies, confusion and risk of inconsistencies attendant to overlapping putative class actions over the same issue proceeding in separate courts—which is the very purpose of 28 U.S.C. § 1407.

## II. FACTUAL BACKGROUND

### A. The Products

The Products are fruit snacks offered in Mixed Fruit, Berries 'N Cherries, and Island Fruits flavors. The Products are sold in 3-ounce bags, multi-count snack boxes, and variety packs. PIM, a Delaware corporation headquartered in New Jersey, formulates, manufactures, packages, labels, markets, distributes, and sells the Products under a license from Welch's. Welch's is a Michigan cooperative corporation headquartered in Massachusetts; it owns the Welch's trademarks and, according to the pleadings in the Subject Actions, retains rights to review, approve, and control labeling and advertising bearing those marks, including for the Products. *See*, *e.g.*, Ex. C (*Maghoney* Compl.), ¶ 12.

### B. The "Zero Sugar" Label

The Products' front labels contain the words "Zero Sugar," and the back labels disclose allulose as the second-listed ingredient. The general theory of liability articulated by all Plaintiffs in the Subject Actions and the Other Related Matters is that the "Zero Sugar" statement is false or misleading to reasonable consumers because the Products contain allulose, which they allege is a "sugar," and that this statement induced them to pay a premium for the Products.

## III. LITIGATION BACKGROUND AND STATUS

The Subject Actions are described more fully below. As shown, all of the Subject Actions allege that the "Zero Sugar" statement was false or misleading because the Products

contain allulose:[2]

1. *Feliciano v. Promotion In Motion, Inc.*, Case No. 1:26-cv-05405 (E.D.N.Y. filed Sept. 1, 2026) ("*Felciano*"). Feliciano brings claims on behalf of (1) a putative nationwide class of all persons in the United States who purchased the Products for personal use "during the maximum period of time permitted by law" for intentional misrepresentation and unjust enrichment; and (2) 31 putative "state consumer protection subclasses"[3] alleging claims under multiple state consumer protection statutes. *See* Ex. A (*Feliciano* Compl.), ¶¶ 55, 64-367.

2. *Ross v. PIM Brands, Inc.*, Case No. 2:26-cv-05551 (E.D.N.Y. filed Sept. 8, 2026) ("*Ross*"). Ross brings claims on behalf of a putative New York class under New York General Business Law ("NYGBL") §§ 349 and 350. *See* Ex. B (*Ross* Compl.), ¶¶ 33, 43-52.

3. *Maghoney v. Promotion In Motion, Inc.*, Case No. 3:26-cv-05235 (S.D. Cal. filed Sept. 11, 2026) ("*Maghoney*"). Maghoney brings claims on behalf of a putative class of California purchasers from May 1, 2023 through the date of class notice for: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), (2) violation of California's Unfair Competition Law ("UCL"), (3) violation of California's False Advertising Law ("FAL"), (4) breach of express warranty and (5) unjust enrichment. *See* Ex. C (*Maghoney* Compl.), ¶¶ 90, 102-162.

4. *Gavros, et al. v. P.I.M. Brands USA, Inc.*, Case No. 3:26-cv-01908-AN (D. Or. filed Sept. 14, 2026) ("*Gavros*"). Plaintiffs Gavros and Kristl Cook bring claims on behalf a

---

[2] *Maghoney* and *Amer*, both discussed below, also base their claims on tangential allegations that (1) an alleged "25% Fewer Calories" statement and (2) an alleged "No Preservatives" statement, respectively, were false or misleading to reasonable consumers.

[3] Alaska, Arizona, Colorado, Delaware, Florida, Hawaii, Idaho, Illinois, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Dakota, Vermont, Virginia, Washington and District of Columbia. *See* Ex. A (*Feliciano* Compl.), ¶ 55.

putative class of Oregon purchasers "during the maximum period of time permitted by law" for violation of the Oregon Unlawful Trade Practices Act, Sections 646.608(1)(e), (g) and 646.638. *See* Ex. D (*Gavros* Compl.), ¶¶ 78, 86-99.

5. *Santoyo v. PIM Brands, Inc.*, Case No. 1:26-cv-11316 (N.D. Ill. filed Sept. 15, 2026) ("*Santoyo*"). Santoyo brings claims on behalf of: (1) a putative class of Illinois consumers under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") and for unjust enrichment; and (2) a putative "Multi-State Consumer Protection Class" consisting of persons from Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York and Washington for alleged violation of "state consumer fraud acts" of each of those states. *See* Ex. E (*Santoyo* Compl.), ¶¶ 1-2, 64, 79-113. Santoyo also purports to reserve the right to add additional states. *Id.* ¶ 66.

6. *Amer v. PIM Brands, Inc., et al.*, Case No. 8:26-cv-02822 (C.D. Cal. Filed Sept. 25, 2026) ("*Amer*"). Amer purports to bring claims on behalf of (1) a putative class of California purchasers for unjust enrichment, violation of the UCL, violation of the CLRA, violation of the FAL and intentional misrepresentation; and (2) a putative "Multi-State Consumer Protection Class" consisting of persons from 19 states for "violation[s] of [various] state consumer protection statutes."[4] *See*, *e.g.*, *id.* ¶¶ 1-9, 56-57, 98-99, 111-166.

The Other Related Matters include the following, which are not presently subject to transfer under 28 U.S.C. § 1407 but are likely to become eligible for transfer because one is a state court case which Defendants intend to promptly remove to federal court and the others are

---

[4] Alaska, Arkansas, California, Connecticut, Delaware, District of Columbia, Florida, Hawaii, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, Rhode Island, Vermont, Washington and Wisconsin. *See* Ex. F (*Amer* Compl.), ¶¶ 98-99.

pre-filing demand letters that will not resolve short of litigation due the pendency of the overlapping and already-filed Subject Actions:

7. *Williams v. P.I.M. Brands USA, Inc.*, Case No. 2026-CAB-006464 (D.C. Super. Ct. filed Sept. 11, 2026) ("*Williams*"). Williams brings claims on behalf of a putative class of District of Columbia purchasers for violation of the District of Columbia Consumer Protection Procedures Act. *See* Ex. G (*Williams* Compl.), ¶¶ 80, 88-101.

8. *Giganti v. PIM Brands, Inc.* (demand letter dated Sept. 2, 2026, with draft complaint in the Southern District of New York attached) ("*Giganti*"). Giganti threatens to bring an action in the Southern District of New York on behalf of himself and (1) a putative nationwide class for intentional misrepresentation, unjust enrichment and breach of express warranty and (2) a putative New York subclass for violation of New York General Business Law §§ 349 and 350. *See* Ex. H (*Giganti* Demand Letter), at 5-6, ¶¶ 1-2; *see also id*. at 16-17, ¶¶ 77-78; *id*. at 19-21, ¶¶ 96-116; *id*. at 21-24, ¶¶ 117-140.

9. *Elliott v. P.I.M. Brands USA, Inc., et al.* (demand letter dated Sept. 8, 2026) ("*Elliott*"). Elliott threatens to bring an action in Massachusetts on behalf of himself and an undefined class for violation of Massachusetts General Laws Chapter 93A, Sections 2 and 9. *See* Ex. I (*Elliott* Demand Letter) at 1-2.

10. *Henriquez v. PIM Brands LLC, et al.* (demand letter dated Sept. 11, 2026) ("*Henriquez*"). Claimant Henriquez threatens to bring an action seemingly in California for claims under the CLRA on behalf of herself and (1) a putative nationwide class and (2) a putative California subclass. *See* Ex. J (*Henriquez* Demand Letter) at 1, n.1; *see also id*. at 1-2.

The following chart illustrates the significant overlap among the putative classes in Subject Actions and the Other Related Matters:

| Overlapping Issue | Overlapping Subject Action(s) | Overlapping Other Related Matter(s) |
|---|---|---|
| **Allegations** | | |
| Causes of action based on allegations that the "Zero Sugar" statement on the Products' labels was false or misleading to reasonable consumers because the Products contain allulose. | All. | All. |
| **Putative Class(es)** | | |
| Putative Nationwide class | All.<br><br>*Feliciano* includes a putative nationwide class, which necessarily overlaps with all other putative classes in the Subject Actions. | All.<br><br>*Giganti*, *Elliot* and *Henriquez* include putative nationwide classes, which overlap with the putative nationwide class in *Feliciano* and also necessarily overlap with all other putative classes. |
| Putative New York class | *Feliciano*, *Ross, Santoyo*, and *Amer* | *Giganti*, *Elliott*, and *Henriquez* |
| Putative California class | *Maghoney, Amer* and *Feliciano* | *Giganti*, *Elliott*, and *Henriquez* |
| Putative Oregon class | *Feliciano* and *Gavros* | *Giganti*, *Elliott*, and *Henriquez* |
| Putative Illinois class | *Feliciano*, *Santoyo* and *Amer* | *Giganti*, *Elliott*, and *Henriquez* |
| Putative District of Columbia class | *Feliciano* and *Amer* | *Williams*, *Giganti*, *Elliott*, and *Henriquez* |
| Putative Arkansas class | *Feliciano* and *Amer* | *Giganti*, *Elliott* and *Henriquez* |
| Putative Connecticut class | *Feliciano* and *Amer* | *Giganti*, *Elliott* and *Henriquez* |
| Putative Wisconsin class | *Feliciano* and *Amer* | *Giganti*, *Elliott* and *Henriquez* |
| Putative Massachusetts, Michigan, Minnesota, Missouri, New Jersey, Washington class | *Feliciano*, *Santoyo* and *Amer* | *Giganti*, *Elliott*, and *Henriquez* |
| Putative Alaska, Delaware, Florida, Hawaii, Rhode Island and Vermont classes | *Feliciano* and *Amer* | *Giganti*, *Elliott* and *Henriquez* |
| **Causes of Action** | | |
| Intentional misrepresentation | *Feliciano* and *Amer* | *Giganti* |
| Unjust enrichment | *Feliciano*, *Maghoney*, *Santoyo* and *Amer* | *Giganti* |
| Breach of warranty | *Maghoney* | *Giganti* |
| NYGBL §§ 349 and 350 | *Feliciano*, *Ross*, *Santoyo* and *Amer* | *Giganti* |
| ICFDBPA | *Feliciano*, *Santoyo* and *Amer* | |
| CLRA | *Maghoney* and *Amer* | *Henriquez* |
| UCL | *Maghoney* and *Amer* | |

| | | |
|---|---|---|
| FAL | *Maghoney* and *Amer* | |
| Oregon Unlawful Trade Practices Act, Section 646.608(1)(e) | *Feliciano* and *Gavros* | |
| District of Columbia Consumer Protection Procedures Act | *Feliciano* and *Amer* | *Williams* |
| Massachusetts General Laws Chapter 93A, *et seq.* | *Santoyo* and *Amer* | *Elliott* |
| Consumer protection statutes for Michigan, Minnesota, Missouri, New Jersey, and Washington | *Feliciano*, *Santoyo* and *Amer* | |
| Consumer protection statutes for Alaska, Delaware, Florida, Hawaii, Rhode Island and Vermont | *Feliciano* and *Amer* | |

The Subject Actions and Other Related Matters are at the outset of litigation. The six Subject Actions which have been filed in federal district court were just recently filed and served. Defendants have not yet responded to any of the complaints and their current deadlines to do so do not begin until October 23. *Williams*, which is currently in District of Columbia Superior Court and therefore not presently eligible for transfer, is in a similar procedural posture, with PIM's current deadline to remove to federal court on October 21, 2026 and its deadline to respond to the complaint on November 2, 2026. The three Other Related Matters (G*iganti, Elliott,* and *Henriquez*) are at an even earlier procedural stage, as these are each pre-filing demand letters for which the statutory waiting time has not expired. Those cases are likely to become filed cases eligible for transfer when the respective pre-filing waiting periods expire throughout October.

## IV. <u>ARGUMENT</u>

### A. Legal Standard

28 U.S.C. § 1407(a) authorizes the coordination and/or consolidation, often referred to as centralization, of civil actions pending in different federal district courts when (1) the "actions involv[e] one or more common questions of fact;" (2) transfer "will promote the just and efficient conduct of such actions;" and (3) transfer "will be for the convenience of parties and

witnesses."

This Panel has frequently found that the centralization of actions under 28 U.S.C. § 1407(a) is appropriate where, as here, it will prevent inconsistent pretrial rulings and duplicative discovery and will conserve the resources of the parties, their counsel, and the judiciary. *See, e.g.*, *In re 5-Hour Energy Mktg. and Sales Practices Litig.*, 949 F. Supp. 2d 1357 (J.P.M.L. 2013); *In re Frito-Lay N. Am., Inc. 'All Natural' Litig.*, 908 F. Supp. 2d 1379, 1380 (J.P.M.L. 2012). The Panel routinely centralizes putative consumer product or mislabeling class actions where—as here—the actions concern a common product, a common course of conduct, and overlapping putative classes and regulatory and consumer-deception questions. *See, e.g.*, *In re Simply Orange Orange Juice Mktg. and Sales Pracs. Litig.*, 867 F. Supp. 2d 1344 (J.P.M.L. 2012); *In re Frito-Lay N. Am., Inc. 'All Natural' Litig.*, 908 F. Supp. 2d 1379; *In re Whole Foods Market, Inc. Greek Yogurt Mktg. and Sales Pracs. Litig.*, 65 F. Supp. 3d 1395 (J.P.M.L. 2014); *In re KIND LLC "All Natural" Litig.*, 118 F. Supp. 3d 1380 (J.P.M.L. 2015); *In re Santa Fe Natural Tobacco Company Mktg. and Sales Pracs. Litig.*, 178 F. Supp. 3d 1377 (J.P.M.L. 2016); *In re Folgers Coffee Mktg. and Sales Pracs. Litig.*, 532 F. Supp. 3d 1416 (J.P.M.L. 2021); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016); *In re: Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1376 (J.P.M.L. 2015). The Panel should do the same here, as the Subject Actions satisfy each of the requirements of 28 U.S.C. § 1407(a) for the same reasons.

### B. Transfer and Centralization Is Warranted Under 28 U.S.C. § 1407

#### 1. The Subject Actions Involve Common Questions of Fact

The threshold requirement that the underlying actions involve common questions of fact is satisfied where, as here, "two or more complaints assert comparable allegations against identical defendants based upon similar transactions and events." *In re Air W. Sec. Litig.*, 384 F.

Supp. 609, 611 (J.P.M.L. 1974). Here, the existence of common questions of fact among the Subject Actions is clear, as each Subject Action is based on the same underlying theory of liability against the same Defendants over the same Products. Specifically, each of the Subject Actions alleges that the "Zero Sugar" statement on the Products' labels was false or misleading to reasonable consumers because the Products contain allulose, which Plaintiffs allege is a sugar.

Because Plaintiffs' underlying theory in each Subject Action is identical, each Subject Action will necessarily focus on the same common nucleus of factual issues, including, but not limited to: (1) whether allulose is a "sugar"; (2) the Products' use of allulose; (3) how allulose functions in the Products; (4) whether and to what extent the Products contain sugar; (5) the meaning of the "Zero Sugar" label statement; (6) the value or price premium attributable to the "Zero Sugar" label statement, if any; (7) Defendants' labeling of the Products as "Zero Sugar"; (8) Defendants' development and manufacturing of the Products; (9) Defendants' marketing, pricing and sales of the Products; (10) Defendants' testing of the Products; (11) Defendants' compliance with labeling and disclosure regulations; and (12) consumer surveys regarding the Products, the label, sugar, and allulose.

As such, the requirement of one or more common questions of fact under 28 U.S.C. § 1407(a) is amply met by these overlapping factual issues.

#### 2. Transfer and Centralization Will Promote the Just and Efficient Conduct of the Subject Actions

Centralization will promote the just and efficient conduct of the Subject Actions because it will remedy the significant inefficiencies, confusion, and risk of inconsistent rulings attendant to duplicative proceedings involving overlapping putative classes.

The Panel has consistently recognized that the "potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single

district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts." *In re Multidistrict Private Civ. Treble Damage Litig. Involving Plumbing Fixtures*, 308 F. Supp. 242, 244-45 (J.P.M.L. 1970). The Panel has likewise "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *see also In re Piper Aircraft Dist. Sys. Antitrust Litig.*, 405 F. Supp. 1402, 1403–04 (J.P.M.L. 1975) ("matters concerning class certification should be included in the coordinated or consolidated pretrial proceedings in order to prevent inconsistent rulings and promote judicial efficiency.").

In recent consumer product MDLs, the Panel has applied this principle specifically to prevent inconsistent class-certification rulings. *See, e.g., In re 5-Hour Energy Mktg. and Sales Practices Litig.*, 949 F. Supp. 2d at 1357 ("Centralization will . . . prevent inconsistent pretrial rulings, including with respect to class certification . . . ."); *In re Frito-Lay N. Am., Inc. 'All Natural' Litig.*, 908 F. Supp. 2d at 1380 (same); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 949 F. Supp. 2d 1369, 1370 (J.P.M.L. 2013) (same); *In re Anheuser-Busch Beer Labeling Mktg. and Sales Practices Litig.*, 949 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013) (same); *In re Charlotte Russe, Inc. Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 505 F. Supp. 2d 1377, 1378 (J.P.M.L. 2007) ("Centralization . . . will . . . prevent inconsistent trial rulings, especially with respect to class certification . . . ."); *In re Canon U.S.A., Inc., Digital Cameras Prods. Liab. Litig.*, 416 F. Supp. 2d 1369, 1370 (J.P.M.L. 2006) (centralization necessary to prevent inconsistent pretrial rulings, "especially with respect to questions of class certification"); *In re Zappos, Inc. Consumer Data Sec. Breach Litig.*, 867 F. Supp. 2d 1357, 1358

(J.P.M.L. 2012) (same); *In re Listerine Total Care Mouthwash Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1354, 1355 (J.P.M.L. 2011) (same).

As David F. Herr, a leading author on multidistrict litigation, explains, "[t]he reason for the importance of potentially conflicting class actions is fairly clear. The management of the litigation would become exceedingly difficult if similar actions involving overlapping classes were proceeding in different districts." David F. Herr, MULTIDISTRICT LITIGATION MANUAL § 5.24 (2014).

These same issues are implicated here and justify centralization. As the chart on pages 7-8 illustrates, there is significant overlap among the putative classes of the Subject Actions, including multiple actions contemplating competing nationwide and/or specific state classes. The overlapping putative classes proceeding in different courts presents a significant risk of confusion and inconsistent rulings, particularly with respect to class certification, dispositive motions, and experts. As a threshold matter, the putative nationwide class in *Felciano* would necessarily subsume each of the putative classes in the other five Subject Actions given it is brought on behalf of a putative nationwide class. The potential for confusion, inconsistencies, and conflicts is manifest. For example, if the court in *Maghoney* denies class certification of the putative California class but the court in *Feliciano* grants certification of the putative nationwide class, then it would be unclear to what extent the putative California class members from *Maghoney* may be part of the putative nationwide class in *Feliciano*. As another example, if the court in *Gavros* grants class certification of the putative Oregon class in that case but the *Feliciano* court denies certification of the putative Oregon class in that case, it would sow confusion of the preclusive effect of each decision and which, if either, controls.

The putative nationwide class in *Feliciano* is not the only source of potential conflict. The other putative classes in *Feliciano* and the five other Subject Actions also overlap in countless ways. For example, *Feliciano*, *Santoyo* and *Amer* each feature putative Illinois, Michigan, Minnesota, Missouri, New Jersey and Washington classes, both *Feliciano* and *Gavros* feature putative Oregon classes, both *Maghoney* and *Amer* feature putative California classes, and *Feliciano*, *Ross*, *Santoyo* and *Amer* include putative New York classes. There is a risk the courts in those cases issue inconsistent certification or dispositive rulings. Moreover, even if the courts grant consistent certification rulings, then the same class would be certified in two or more different courts and, as a result, logistical and procedural issues attendant to the same class proceeding with the same claims in different courts would give rise to a risk of double or cumulative recovery for the same putative class members. Even more problematic would be a situation where inconsistent merits rulings could present issue or claim preclusion implications.

Class certification is not the only potential source of confusion or inconsistency. There is also a significant risk that one court may dismiss a putative class's claims while another court denies a motion to dismiss the same putative class's claims. *See In re: Protegrity Corp. & Protegrity USA, Inc., Patent Litig.,* 84 F. Supp. 3d 1380, 1381 (J.P.M.L. 2015) ("centralization will eliminate the potential for inconsistent rulings on several pending motions to dismiss."). Moreover, one court may strike or limit an expert under Federal Rule of Evidence 702 and/or *Daubert*, while another does not, causing confusion and inconsistency over the extent to which that party may use that expert to support its case involving the same class in different courts, or even more generally to support its case involving any class over the same issues. *See In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, 176 F. Supp. 3d 1377, 1378 (J.P.M.L. 2016) (centralization prevents inconsistent pretrial rulings on *Daubert* and other issues).

There is an even more basic issue with overlapping putative classes proceeding in different courts: duplication. For example, there are putative Oregon classes in both *Feliciano* and *Gavros*, which results in Defendants being forced to defend against the same, or substantially the same, claims by the same putative class by different counsel in two different courts. The same is also true for the putative Illinois classes in *Feliciano*, *Santoyo*, and *Amer*, the putative New York classes in *Feliciano*, *Ross*, *Santoyo*, and *Amer*, the putative California classes in *Maghoney* and *Amer*, and the putative Michigan, Minnesota, Missouri, New Jersey and Washington classes in *Feliciano*, *Santoyo*, and *Amer*. Absent centralization, Defendants will unnecessarily incur duplicative costs, attorney's fees and other time and expense defending against the same putative classes in different courts with different counsel. Duplicative proceedings in different courts against the same putative classes also present a significant risk of each putative class's case developing along inconsistent tracks. For example, the same putative Oregon class in *Feliciano* may have a class certification deadline set months before or after the same putative class must file class certification in *Gavros*. There would also be confusion over which counsel has authority to speak or enter into stipulations on behalf of each putative class.

Multiple courts overseeing the same claims by the same or overlapping putative classes, and determining the same issues, also creates an unnecessary strain on already-limited judicial resources. There is no benefit, and only downside in the form of inconsistency, for two or more courts to expend resources deciding identical issues over the same claims against the same Defendants, policing substantially identical discovery, and resolving overlapping dispositive and class certification motions.

The foregoing are but a few examples of the potential for inconsistent rulings, confusion, and duplication that may arise if the Subject Actions proceed separately. That is precisely why

this Panel has ordered centralization in similar scenarios: to allow one court and one judge to resolve these issues in a way that they could not be if they remained in separate courts.

### 3. Transfer and Centralization Will Be for the Convenience of the Parties and Witnesses

The substantial number of common questions of fact and other overlap among the Subject Actions illustrate that centralization will also be for the convenience of the parties and witnesses because it will significantly minimize or eliminate duplicative discovery.

This Panel routinely grants centralization where it will prevent duplicative discovery. *See, e.g., In re Visa/MasterCard Antitrust Litig.,* 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) ("centralization under § 1407 is thus necessary in order to avoid duplication of discovery . . . and conserve the resources of the parties, their counsel and the judiciary"); *In re Merscorp, Inc., Real Estate Settlement Procedures Act (RESPA) Litig.*, 473 F. Supp. 2d 1379, 1379 (J.P.M.L. 2007) (holding that centralization under Section 1407 was warranted in order to eliminate duplicative discovery); *In re Enfamil Lipil Mktg. and Sales Pracs. Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses."); *Frito Lay*, *supra*, 908 F. Supp. 2d at 1380 ("Centralization under Section 1407 will eliminate duplicative discovery . . . ."); *5-Hour Energy*, *supra*, 949 F. Supp. 2d at 1357 (same); *Subway Footlong*, *supra*, 949 F. Supp. 2d at 1370 (same); *Anheuser-Busch Beer*, *supra*, 949 F. Supp. 2d at 1372 (same); *In re Coca-Cola Products Mktg. and Sales Pracs. Litig.*, 37 F. Supp. 3d 1386, 1387 (J.P.M.L. 2014) (same); *In re Uranium Indus. Antitrust Litig.*, 458 F. Supp. 1223, 1230 (J.P.M.L. 1978) ("[Plaintiffs] will have to depose many of the same witnesses, examine many of the same documents, and make many similar pretrial motions in order to prove their . . . allegations. The benefits of having a single judge supervise this pretrial activity are

obvious."); *In re Cuisinart Food Processor Antitrust Litig*., 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer and consolidation would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").

Here, it is abundantly clear based on the identical nature of the underlying claims and theories of liability that duplicative discovery will occur between the various proceedings if the cases are not centralized. Each of the above-identified common questions of fact is central to the same underlying theory in each Subject Action and will be the subject of extensive discovery. Thus, centralization "will be for the convenience of parties and witnesses" by materially reducing the burden of that discovery. Each issue will be resolved principally through the same records and witnesses, both fact and expert. For example, without centralization, Defendants will be required to respond to multiple different sets of discovery requests from different plaintiffs on behalf of overlapping putative classes involving the same issues, and collect and produce the same documents and information, in five federal districts (and likely more due to anticipated tag-along actions), prepare the same custodians for multiple depositions on the same topics, litigate recurring discovery disputes before different judges, prepare and produce the same experts in multiple cases on the same issues, and respond to duplicative, and potentially conflicting, testimony from different experts in each case. Retailer, regulatory, and other third-party witnesses could face the same duplication. One coordinated proceeding will instead streamline and reduce unnecessary duplication and inconsistencies by providing for uniform discovery protocols that avoid repeated or inconsistent discovery obligations, including preservation, custodial, search-term, production, privilege, confidentiality, deposition and expert discovery issues.

Plaintiffs likewise will benefit from a single, organized common-discovery record and coordinated expert work. The Panel has recognized the practical value of allowing prudent counsel to combine forces, streamline the efforts of parties and witnesses, and minimize expense and inconvenience. *See*, *e.g.*, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001). That benefit is especially pronounced here because the putative classes significantly overlap and the demand letters forecast additional filings. Centralization will vastly increase the efficiency of discovery where duplication across separate actions is inevitable.

**4. Centralization Is Necessary**

A single transferee judge is the only practical means to eliminate or minimize the issues illustrated in the foregoing sections. One judge can resolve the interplay and confusion among overlapping putative classes, ensure consistent pretrial rulings, avoid duplicative proceedings and discovery, ensure consistent application of Federal Rule of Civil Procedure 23, and avoid subjecting the parties to contradictory obligations. They can develop an approach to manage pre-trial motions, class and merits discovery, and overlapping putative classes with different counsel that will eliminate or minimize duplication, confusion, and inconsistency that would otherwise run rampant without centralization. For example, the transferee court can enter uniform protective orders, establish document discovery, deposition, and expert discovery protocols, coordinate pretrial motions so common issues are briefed and decided once, and coordinate class certification motions to avoid duplication and inconsistent rulings. Ordering centralization now will allow one court to establish a coherent framework that prevents or minimizes these issues before they multiply and materialize. In the words of the Panel, transfer will "ensure that the actions are supervised by a single judge who, from day-today contact with all aspects of the litigation, will be in the best position to design a pretrial program that will

prevent duplicative discovery, eliminate the possibility of conflicting rulings and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Res. Exploration, Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980).

The timing is also compelling. The Subject Actions are at an early stage as Defendants have not responded to any Complaints and therefore centralization will cause minimal disruption. Moreover, the issues illustrated in the foregoing sections will only be compounded and amplified in the likely event the Other Related Matters and additional tag-along actions are filed. Indeed, three of the Other Related Matters threaten to bring putative nationwide classes and once those actions are filed, the number of courts confronting the same questions and the web of overlapping claims and putative classes will grow further. Centralization now is the most efficient means to put a plan in place to manage the Subject Actions and future federal tag-along actions before logistical and procedural issues and inconsistencies start to develop. On the other hand, if the Subject Actions are not centralized now, those issues will begin to manifest.

### C. The Eastern District of New York Is the Appropriate Transferee District

In selecting a transferee district, the Panel considers case-specific factors such as the location and concentration of pending related actions, their relative procedural advancement, the proximity of relevant witnesses and evidence, the convenience and accessibility of the forum, and the availability of an appropriate transferee judge. *See, e.g.*, *In re Oral Phenylephrine Mktg. & Sales Practices Litig.*, 709 F. Supp. 3d 1380, 1383 (J.P.M.L. 2023); *In re Perry Johnson & Assocs. Med. Transcription Data Sec. Breach Litig.*, 717 F. Supp. 3d 1357, 1360 (J.P.M.L. 2024). The relevant considerations support transfer to the Eastern District of New York.

First, the Eastern District of New York has the largest concentration of Subject Actions in any single federal district. Two of the six Subject Actions, including the two earliest-filed actions, are pending in the Eastern District of New York and were brought by residents of that

District: *Feliciano* and *Ross*.[5] Each of the remaining four Subject Actions is pending in a different district, leaving no other district with more than one Subject Action. The Panel has considered both the concentration of related actions and the location of the earliest-filed actions in selecting the transferee district. *See, e.g.*, *In re Oral Phenylephrine*, 709 F. Supp. 3d at 1383 (selecting EDNY where two actions on the motion and three potential tag-along actions were pending there); *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, 908 F. Supp. 2d at 1380 (selecting EDNY where three related food-labeling actions, including a consolidated action encompassing the product lines at issue, were pending there); *In re Groupon, Inc., Mktg. & Sales Practices Litig.*, 787 F. Supp. 2d 1362, 1364 (J.P.M.L. 2011) (concluding that the proposed district, "where the first-filed action is pending, stands out as an appropriate transferee forum").

Second, PIM's corporate headquarters are located in Park Ridge, New Jersey—within the New York metropolitan area and in close proximity to the Eastern District of New York. Welch's corporate headquarters are also located in nearby Massachusetts. The common corporate witnesses and documents relevant to the Subject Actions, including those concerning the formulation, labeling, marketing, and sale of the Products, are located at or near PIM's and/or Welch's headquarters. Moreover, the plaintiffs in both Subject Actions pending in EDNY reside within the District. Each of the other Subject Actions, by contrast, is pending substantially farther from PIM's and Welch's headquarters, in the District of Oregon, Central and Southern Districts of California, or Northern District of Illinois. The Panel has recognized the proximity

---

[5] The Panel also considers the relative progress of pending actions in selecting a transferee district. *See, e.g.*, *In re MI Windows & Doors, Inc., Prods. Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012) (selecting a transferee district where "[o]ne of the earliest filed and most advanced actions" was pending and the assigned judge was "familiar with the litigation"). Here, however, no Subject Action has progressed materially further than the others. All six Subject Actions were recently filed, Defendants have not yet responded to any complaint, and no court has developed materially greater familiarity with the common issues presented by these actions.

of common evidence in the New York and New Jersey region as a factor supporting selection of EDNY as a transferee district. *See In re Oral Phenylephrine*, 709 F. Supp. 3d at 1383 (selecting EDNY where "common witnesses and other relevant evidence likely will be found in or near this district given the location of several defendants' headquarters in the New Jersey and New York area"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1380 (J.P.M.L. 2009) (selecting EDNY where a defendant was headquartered "in New York, albeit in another federal district," and "relevant documents and witnesses [would] likely be found nearby"). Here, too, EDNY's connections to the parties and its proximity to Defendants' headquarters and to the corporate witnesses and documents likely to be relevant across the Subject Actions support its selection as the transferee district.

Finally, no Subject Action has progressed to the point that any particular judge has developed material familiarity with the litigation or the common issues presented. Defendants therefore do not request assignment to a particular transferee judge and respectfully leave that determination to the Panel.

For these reasons, the Eastern District of New York is the appropriate transferee district for this litigation.

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel order transfer of the Subject Actions to the Eastern District of New York, in addition to any other federal "tag-along" actions that may arise.

Dated: October 6, 2026

Respectfully submitted,

**VENABLE LLP**

Daniel S. Silverman
dssilverman@venable.com
Bryan J. Weintrop
bjweintrop@venable.com
Brandon M. Stoffers
bmstoffers@venable.com
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
Tel.: (310) 229-9900
Fax: (310) 229-9901

Melissa C. McLaughlin
mcmclaughlin@venable.com
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
Tel.: (410) 244-7400
Fax: (410) 244-7742

Alexandra E. Deitz
aedeitz@venable.com
151 W. 42nd Street, 49th Floor
New York, NY 10036
Tel.: (212) 307-5500
Fax: (212) 307-5598

*Attorneys for Defendants PIM BRANDS, INC., erroneously sued in some cases as PROMOTION IN MOTION, INC. and P.I.M. BRANDS USA, INC., and WELCH FOODS INC., A COOPERATIVE*