# EXHIBIT G

eFiled
9/11/2026 6:07:01 PM
Superior Court
of the District of Columbia

**SUPERIOR COURT FOR THE**
**DISTRICT OF COLUMBIA**

**COREY WILLIAMS,** ***on behalf of himself and all others similarly situated,***

**SERVE:**
James L. Kauffman, Bailey & Glasser LLP,
1055 Thomas Jefferson St. NW, Suite 540,
Washington, DC 20007

*Plaintiff,*

v.

**P.I.M BRANDS USA, INC.,**
One PIM Plaza
Park Ridge, NJ 07656

**SERVE:**
Corporation Service Company
251 Little Falls Dr.
Wilmington, DE 19808

*Defendant.*

CASE NO. 2026-CAB-006464

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Corey Williams individually and on behalf of all others similarly situated, brings this Class Action Complaint against P.I.M. Brands USA, Inc. ("Defendant"), and alleges as follows:

## INTRODUCTION

1. Plaintiff brings this class action on behalf of consumers who purchased Defendant's Welch's Zero Sugar Fruity Bites (the "Products") during the applicable Class Period. Defendant formulates, labels, markets, advertises, distributes, and sells the Products throughout the United States, including in the District of Columbia. Defendant sells the Products through retail stores, online retailers, and other channels of commerce.

2. The Products include, but are not limited to, the following products: Welch's Zero Sugar Fruity Bites Mixed Fruit; Welch's Zero Sugar Fruity Bites Island Fruit; and Welch's Zero Sugar Fruity Bites Berries 'n Cherries.[1]

3. Defendant prominently markets the Products to consumers as "ZERO SUGAR" and through substantially similar representations that communicate to consumers that the Products contain no sugar (collectively, the "Zero Sugar Representations"). These representations are false and misleading. In reality, the Products contain a substantial quantity of allulose, and put simply, allulose is sugar. Allulose is the second listed ingredient in the Products' ingredient lists, indicating it is the second most prevalent ingredient by weight in the Products. Upon information and belief, each serving of the Products contains 0.5 grams or more of allulose. Allulose is a monosaccharide and is included within the federal regulatory definition of "Total Sugars." *See* 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total Sugars" as "the sum of all free mono- and disaccharides"). Federal regulation permits claims like the Zero Sugar Representations only if "[t]he food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii)…per labeled serving." 21 C.F.R. § 101.60(c)(1). The District of Columbia has adopted and incorporated federal food labeling regulations, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii). D.C. Mun. Regs. tit. 25-A, § 1102. The Products thus contain a substance that constitutes "Total Sugars" under the governing federal and parallel District of Columbia regulations in an amount that equals or exceeds the 0.5-gram-per-serving ceiling for a product represented as "zero sugar." 21 C.F.R. § 101.60(c)(1).

[1] *Zero Sugar Fruity Bites*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/product-categories/welchs-zero-sugar-fruity-bites/ (last visited Sept. 5, 2026). Plaintiff reserves the right to add to the list of Products if more become apparent during the litigation.

4. The deception alleged here is straightforward. Defendant tells consumers, in prominent and unqualified terms, that the Products contain "ZERO SUGAR." Yet the Products are deliberately formulated with a substantial amount of sugar.

5. Defendant nevertheless seeks to capitalize on consumers' desire for products that are genuinely free of sugar by falsely, misleadingly, and deceptively labeling and advertising the Products with the Zero Sugar Representations. Defendant's Zero Sugar Representations appear prominently on the Products' labels and in Defendant's advertising and marketing materials. Defendant thereby conveys an unqualified message to consumers as a selling point: the Products contain zero sugar. That message is false or misleading because the Products contain a substantial amount of sugar in the form of allulose.

6. The Zero Sugar Representations are material. The presence or absence of sugar is a characteristic that a reasonable consumer, acting reasonably under the circumstances, would consider important in deciding whether to purchase the Products. The absence of sugar is an important characteristic of the Products and is precisely the characteristic Defendant prominently features in its marketing, which Defendant would not do if it did not help sell the Products.

7. Defendant knows that consumers place substantial value on products represented as containing no sugar and uses the Zero Sugar Representations to induce consumers to purchase the Products. Among other things, Defendant charges consumers for the Products based upon the value consumers place on the Products' represented characteristics, including the representation that they contain no sugar. Defendant's "ZERO SUGAR" Products are priced at a premium over comparable Welch's Fruit Snacks products that do not carry such representations, as set forth below, further demonstrating the material economic value of the Zero Sugar Representations.

8. Plaintiff and Class Members therefore suffered economic injury at the point of purchase. They paid a price premium for Products represented as having "ZERO SUGAR," but they received Products with a substantial amount of sugar.

9. Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period. Plaintiff seeks, on his individual behalf and on behalf of the Class, actual damages, statutory damages, and all other relief available under applicable law to remedy Defendant's deceptive conduct and prevent Defendant from continuing to market, advertise, and sell the Products, containing substantial quantities of allulose, using the false and misleading Zero Sugar Representations.

10. As set forth below, Defendant's conduct violates applicable consumer-protection laws, including the District of Columbia's Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq*.

**PARTIES**

11. Corey Williams is, and at all times relevant hereto was, a citizen of the District of Columbia residing in Washington, D.C. He purchased Welch's Zero Sugar Fruity Bites for personal use from Amazon.com on multiple occasions in 2026, including on or about April 17, 2026; April 25, 2026; and May 10, 2026.

12. P.I.M. Brands USA, Inc. ("PIM Brands") is a Delaware corporation with its principal place of business at One PIM Plaza, Park Ridge, New Jersey 07656. It formulates, labels, markets, distributes, and sells the Products throughout the United States pursuant to an exclusive trademark license from Welch Foods, Inc., A Cooperative. PIM Brands is identified on the Products' packaging as the manufacturer or seller of the Products.

## JURISDICTION AND VENUE

13. Venue is proper in this Court under D.C. Code § 28-3905(k)(2), which provides that any claim under the District of Columbia's Consumer Protection Procedures Act "shall be brought in the Superior Court of the District of Columbia."

14. The Court has personal jurisdiction over Defendant based upon sufficient minimum contacts which exist between Defendant and the District of Columbia. Defendant's Products are advertised, marketed, distributed, and sold throughout the District of Columbia. Defendant engages in the conduct alleged in this Complaint within the District of Columbia. Defendant's activity within the District of Columbia is substantial, not merely isolated. Defendant has purposefully availed itself of the District of Columbia's market and has sufficient minimum contacts, rendering the exercise of jurisdiction by the Court permissible under the traditional notions of fair play and substantial justice.

## ALLEGATIONS OF FACT

### Defendant Markets, Advertises, and Sells the Products as "ZERO SUGAR"

15. Defendant formulates, labels, markets, advertises, distributes, and sells the Products to consumers throughout the United States, including in the District of Columbia. The Products are sold online and through major retailers, including Safeway, Target and other retail stores.

16. Defendant markets and sells the Products as food products intended for purchase and consumption by ordinary consumers. Upon information and belief, Defendant controls the Products' formulation, ingredients, packaging, labeling, advertising, website content, point-of-sale materials, and other representations made to consumers concerning the Products. Defendant therefore possesses, or has access to, information concerning the Products' ingredients and formulation that consumers do not possess.

17. Defendant prominently represents that the Products are "ZERO SUGAR" and/or makes other substantially similar representations communicating that the Products contain no sugar. These representations are affirmative representations concerning a material characteristic of the Products.

18. The Zero Sugar Representations appear, or have appeared, on the Products' packaging, and in Defendant's other marketing and advertising materials, including Defendant's website, Amazon product listings, and other retailer listings. Defendant thus places the Zero Sugar Representations directly before consumers at the time they encounter, evaluate, and decide whether to purchase the Products.

19. As depicted below, Defendant's Products bear the Zero Sugar Representations on the front label:[2]

[2] Screenshots of the Products' packaging as displayed Defendant's website. *Zero Sugar Fruity Bites*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/product-categories/welchs-zero-sugar-fruity-bites/ (last visited Sept. 5, 2026).


Welch's
FAMILY FARMER OWNED
MIXED FRUIT
Natural & Artificial Flavors
ZERO SUGAR
FRUITY BITES
25% Fewer Calories Than Our Original Fruit Snacks
Chewy Not Sticky • Gluten Free
NET WT 3 OZ (85 g)
Welch's® Zero Sugar Fruity Bites
Mixed Fruit


Welch's
FAMILY FARMER OWNED
BERRIES 'N CHERRIES
Natural & Artificial Flavors
ZERO
SUGAR
FRUITY
BITES
25% Fewer Calories Than Our Original Fruit Snacks
Chewy Not Sticky • Gluten Free
NET WT 3 OZ (85 g)
Welch's® Zero Sugar Fruity Bites
Berries 'n
Cherries




20. The Zero Sugar Representations also appear prominently in the Products' description and marketing materials, such as "[s]mart snacking made easy with zero sugar," "GLUTEN FREE, SUGAR FREE, AND FAT FREE," and "great for travel, commuting, outdoor activities, or busy days when you need a convenient, gluten free snack with zero sugar."[3]

[3] *Welch's Zero Sugar Fruity Bites - Mixed Fruit - 3 Oz - 12 Pack*, Amazon.com, https://www.amazon.com/Welchs-Sugar-Fruity-Gluten-Snacks/dp/B0DW5ZTYMB (last visited Sept. 5, 2026).

21. The Zero Sugar Representations are displayed prominently and are presented to consumers as an objective fact concerning the Products, rather than as an opinion, estimate, or qualified statement.

22. Defendant repeatedly uses the false Zero Sugar Representations to identify, distinguish, brand, advertise, and sell the Products in the marketplace. The representations therefore form an important part of the Products' labeling, branding, advertising, and overall marketing message. The Zero Sugar Representations also serve to distinguish the Products from Defendant's other products, which Defendant acknowledges do contain sugar.

23. An ordinary consumer encountering an unqualified representation that a food product is "ZERO SUGAR" would reasonably understand that representation according to its ordinary meaning: that the Products contain no sugar.

24. Defendant's decision to place the Zero Sugar Representations prominently on the Products demonstrates that Defendant understood the representations were material and intended them to communicate an important product attribute and to influence consumers' purchasing decisions.

**The Products Contain Allulose.**

25. Contrary to Defendant's Zero Sugar Representations, the Products contain a substantial amount of sugar per serving in the form of allulose. Allulose is the second-listed ingredient, and under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Thus, allulose is the second most prominent ingredient in the Products.

26. Allulose is not an incidental contaminant, trace substance, or ingredient that appears in the Products by accident. It is an intentionally selected ingredient in the Products' formulation.

Defendant deliberately uses allulose in manufacturing the Products and knowingly places Products containing allulose into the marketplace.

27. Allulose is a naturally occurring sugar found in small amounts in figs, raisins, wheat, maple syrup, and molasses. Chemically, allulose is a monosaccharide, just like fructose. Allulose and fructose are both sugar carbohydrates.

28. Defendant knows that the Products contain allulose because Defendant formulates, manufactures, packages, markets, and/or sells the Products and controls the Products' ingredient information and labeling.

29. Allulose is an ingredient intentionally included in the Products' formulation and identified in the Products' ingredient list. For example, allulose is the Products' second-listed ingredient for the "Mixed Fruit" flavor: "Maltitol, ***allulose***, maltodextrin, modified corn starch, gelatin, citric acid (acidulant), natural and artificial flavors, carnauba wax, annatto (color), turmeric (color), and fruit and vegetable juice (color)."[4] Similarly, allulose is the second-listed ingredient for the "Island Fruit" flavor: "Maltitol, ***allulose***, maltodextrin, modified corn starch, gelatin, citric acid (acidulant), natural and artificial flavors, carnauba wax, annatto (color), turmeric (color), spirulina (color), and fruit and vegetable juice (color)."[5]

30. Thus, Defendant's own admissions both establish the presence of allulose and indicate a high quantity of allulose in the Products.

31. The Products therefore contain a substantial quantity of sugar in the form of allulose notwithstanding Defendant's repeated representation that the Products contain "ZERO SUGAR."

---

[4] *Mixed Fruit*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/products/mixed-fruit-3/ (last visited Sept. 5, 2026).

[5] *Island Fruits*, Welch's Fruit Snacks, https://welchsfruitsnacks.com/products/island-fruits-2/ (last visited Sept. 5, 2026).

32. Defendant's marketing creates a direct contradiction. Allulose is sugar; a product sweetened with allulose is by definition a product containing sugar. By prominently telling consumers that the Products contain no sugar while intentionally formulating the Products with substantial quantities of allulose, Defendant deceives the public through misleading packaging statements and labels. This deception has earned Defendant substantial revenue while damaging a broad class of consumers across the District of Columbia.

**Allulose is a Sugar Under the Applicable Definition.**

33. Federal law establishes specific requirements governing when a food manufacturer may represent a product as "sugar free," "zero sugar," or using a substantially similar nutrient-content claim. Under 21 C.F.R. § 101.60(c)(1), a food may not be labeled "sugar free," "zero sugar," or with a substantially similar claim unless it "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii)," and satisfies the regulation's other requirements.

34. Section 101.9(c)(6)(ii), in turn, expressly defines "Total Sugars" broadly as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."

35. Allulose is a monosaccharide. It therefore falls within the express language of § 101.9(c)(6)(ii), which encompasses "all free mono- and disaccharides."

36. Nothing in the regulatory text of § 101.9(c)(6)(ii) excludes allulose from the definition of "Total Sugars."

37. The FDA's regulatory history confirms this reading. In its 2016 final rule revising the Nutrition Facts label, the FDA specifically considered the treatment of allulose and stated that

"[a]llulose, as a monosaccharide, must be included" in the Total Sugars declaration unless and until the agency adopted a different rule.[6]

38. The FDA's 2016 statement is consistent with the text of § 101.9(c)(6)(ii): because allulose is a monosaccharide, it falls within the regulation's definition of "Total Sugars."

39. The FDA subsequently issued guidance concerning allulose in October 2020. That guidance did not amend § 101.9(c)(6)(ii), did not promulgate a new definition of "Total Sugars," and did not formally exclude allulose from the regulatory definition of sugar.[7]

40. Instead, the 2020 guidance announced an exercise of enforcement discretion concerning the declaration of allulose on Nutrition Facts labels, pending further consideration through rulemaking. The guidance addressed the FDA's enforcement position concerning how allulose should be treated for purposes of specified nutrition-panel declarations; it did not amend the underlying regulation or establish a new definition of sugar.

41. Nothing in the 2020 guidance authorizes a manufacturer to disregard the separate regulatory requirements governing nutrient-content claims such as "zero sugar."

42. The FDA's decision not to enforce provisions of law does not amend the text of the law or absolve actors of their violations of law. The 2020 guidance therefore did not transform the regulatory definition of "Total Sugars" into a definition that excludes allulose.

43. Nor does the FDA's exercise of enforcement discretion establish that a manufacturer may brazenly, and falsely, represent that a product contains "ZERO SUGAR" while

---

[6] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).
[7] United States FDA, The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry 1 (Oct. 2020).

the product contains a substantial amount of monosaccharide encompassed by the regulation's definition of "Total Sugars."

44. Applicable District laws and regulations likewise incorporate and impose an identical or materially similar requirement governing the use of "zero sugar," "sugar free," and substantially similar representations as that imposed by federal law. District of Columbia Municipal Regulation 25-A, § 1102 incorporates applicable federal food labeling requirements, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii).

**The Zero Sugar Representations Are False and Misleading.**

45. Defendant represents the Products contain "ZERO SUGAR," but the Products contain a substantial amount of allulose per serving.

46. Because allulose is a monosaccharide that falls within the applicable definition of sugar and is the second-listed ingredient, upon information and belief, the Products' sugar content exceeds the less than 0.5-gram threshold required to lawfully utilize "ZERO SUGAR" nutrient-content claims. Thus, the Products cannot bear the "ZERO SUGAR" representations under § 101.60(c)(1).

47. Accordingly, Defendant's Products do not satisfy the federal regulatory standard governing the use of the Zero Sugar Representations, nor do they satisfy the identical state regulatory standards.

48. Defendant nevertheless brazenly represents to consumers that the Products contain "ZERO SUGAR."

49. Defendant's representations that the Products contain "ZERO SUGAR" are objectively false.

50. The representations are also independently misleading to reasonable consumers because an unqualified "sugar free" or "zero sugar" representation communicates that the product contains no sugar, while Defendant's Products contain a substantial quantity of sugar in the form of allulose.

51. The prominence and repetition of the Zero Sugar Representations reinforce their significance. Defendant places the Zero Sugar Representations on the Products' packaging and uses them throughout Internet and retail product listings, thereby presenting the absence of sugar as an important attribute and selling point of the Products.

**Defendant Knew the Products Contain Substantial Amounts of Allulose**

52. Defendant knew that the Products contained substantial amounts of allulose before placing the Products on the market.

53. Defendant knew the amount of allulose contained in each serving of the Products.

54. Defendant necessarily possessed this information because Defendant controls the Products' formulation, ingredient specifications, manufacturing, packaging, labeling, and marketing.

55. Defendant also knew that consumers would encounter and consider the Zero Sugar Representations when deciding whether to purchase the Products. The product packaging and advertisements highlight the "ZERO SUGAR" nature of the Products.

56. Upon information and belief, Defendant selected and used the Zero Sugar Representations as part of a deliberate marketing strategy designed to distinguish the Products from competing products, including less costly versions of other fruit snacks containing conventional sugar, and to appeal to consumers willing to pay a premium for products without sugar.

57. Defendant's repeated use of the Zero Sugar Representations on the Products' packaging and in its advertising was not the result of an isolated printing error, inadvertent omission, or one-time mistake. Rather, Defendant incorporated the representations into the Products' branding and marketing and sold the Products to customers while using those representations.

58. Upon information and belief, Defendant was aware that allulose is a sugar but nevertheless made a false nutrient-content claim that the Products were "ZERO SUGAR."

59. Defendant's use of the representations despite its knowledge of the Products' formulation further demonstrates that the representations were an intentional and material component of Defendant's marketing and sale of the Products.

60. Upon information and belief, Defendant continues to market and sell the Products using the Zero Sugar Representations.

61. Defendant's conduct was undertaken in the course of its business and in connection with the marketing, advertising, distribution, and sale of the Products to consumers.

62. Defendant had the ability to accurately describe the Products or to simply make no nutrient-content claim concerning sugar at all. Instead, Defendant affirmatively chose to market and sell the Products using the Zero Sugar Representations, thereby inducing consumers seeking products without sugar to purchase the Products.

**Plaintiff and Consumers Were Injured by Defendant's Misrepresentations.**

63. Corey Williams purchased Welch's Zero Sugar Fruity Bites for personal use from Amazon.com on multiple occasions in 2026, including on or about April 17, 2026; April 25, 2026; and May 10, 2026.

64. Before purchasing the Products, Corey Williams encountered Defendant's Zero Sugar Representations on the front label and product listing.

65. Plaintiff understood Defendant's Zero Sugar Representations to mean that the Products contained no sugar.

66. The Zero Sugar Representations are material. Whether a food product contains sugar is a characteristic that a reasonable consumer, acting reasonably under the circumstances, would consider important in deciding whether to purchase it. Defendant's own conduct confirms materiality: Defendant placed the representation on the front of every package and charged a premium for the Products bearing it.

67. Had Plaintiff known that the Products contained a substantial amount of sugar, Plaintiff would not have purchased the Products or would have purchased them only for substantially less money. The Products were worth less than they would have been had they actually conformed to Defendant's representations that they contained "ZERO SUGAR."

68. Defendant charges a higher price for its "ZERO SUGAR" Products than for comparable products that do not bear the Zero Sugar Representations. For example, on Amazon, a twelve-pack of 5.0 oz bags of regular Welch's Fruit Snacks Mixed Fruit was priced at $18.03, or $0.30/ounce, while a twelve-pack of 3.0 oz bags of Welch's Zero Sugar Fruity Bites Mixed Fruit was priced at $42.57, or $1.18/ounce, approximately a 293.3% per-ounce premium for the Welch's Zero Sugar Fruity Bites.[8]

---

[8] *Welch's Zero Sugar Fruity Bites - Mixed Fruit - 3 Oz - 12 Pack*, Amazon.com, https://www.amazon.com/Welchs-Sugar-Fruity-Gluten-Snacks/dp/B0GHD451MX (last visited Sept. 5, 2026); *Welch's Fruit Snacks, Mixed Fruit, Sharing Size, 5 oz, 12 Ct*, Amazon.com, https://www.amazon.com/Welchs-Perfect-Stocking-Stuffer-Individual/dp/B003Z2N8GI (last visited Sept. 5, 2026).







69. Plaintiff paid a price that incorporated the value of Defendant's Zero Sugar Representations but received Products that did not conform to those representations.

70. Plaintiff therefore suffered economic injury at the point of purchase.

71. Plaintiff did not receive the benefit of the bargain for which he paid. Instead, Plaintiff received Products that contained a substantial amount of allulose despite Defendant's representations that the Products contained "ZERO SUGAR."

72. Plaintiff's injury was caused by Defendant's misrepresentations. The challenged representations concern an important characteristic of the Products that Defendant affirmatively placed before consumers as a reason to purchase them.

73. The same deception affected other consumers who purchased the Products after encountering the Zero Sugar Representations. Those consumers were exposed to the same materially misleading representations, purchased Products containing a substantial amount of sugar, and received Products that did not conform to Defendant's representations.

74. The challenged conduct is therefore consumer-oriented and arises from Defendant's common marketing, labeling, advertising, and sale of the Products to the public.

75. Defendant's conduct constitutes deceptive, misleading, unfair, and/or unlawful conduct under the consumer-protection laws applicable to Plaintiff's purchases and claims, including, as applicable, the District of Columbia Consumer Protection Procedures Act.

76. Defendant made representations concerning the Products that were objectively false and/or misleading to reasonable consumers.

77. Defendant's representations were material because they concerned the Products' sugar content and were used to induce consumers to purchase the Products.

78. Defendant's conduct caused Plaintiff to suffer ascertainable economic injury in the form of a price premium.

79. As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unlawful conduct described above, Plaintiff and members of the proposed Class were injured in

fact and suffered ascertainable economic losses when they paid a premium for products bearing Defendant's false or misleading Zero Sugar Representations. The foregoing allegations establish Plaintiff's and the proposed Class members' claims arising from Defendant's common course of conduct, which forms the basis for the class allegations set forth below.

## CLASS ACTION ALLEGATIONS

80. Plaintiff brings this case as a class action pursuant to D.C. Super. Ct. R. Civ. P. 23 on his own behalf and on behalf of all others similarly situated. The proposed Class is defined as follows:

> All persons who, from three years before the filing of this Complaint until the date an order granting class certification issues, purchased the Products in the District of Columbia for personal, family, or household use, and not for resale.

81. The Class does not include: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils, and/or subdivisions; (iv) any judicial officer presiding over this matter and persons within the third degree of consanguinity to such judicial officer; and (v) Plaintiff's counsel and Defendant's counsel.

82. Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

83. Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class consists of thousands of purchasers. Accordingly, it would be impracticable to join all members of the Class before the Court.

84. There are numerous questions of law or fact common to all members of the putative Class. Included within the common questions of law or fact are:

a. Whether the Products contain allulose and, if so, the amount of allulose contained in the Products;

b. Whether allulose is a sugar under the applicable laws, regulations, and standards governing the Zero Sugar Representations;

c. Whether Defendant represented that the Products contained "ZERO SUGAR," are "sugar free," or substantially similar nutrient-content claims;

d. Whether these representations were false, deceptive, misleading, or otherwise unlawful under the laws asserted herein;

e. Whether Defendant's labeling, packaging, advertising, marketing, and sale of the Products constituted consumer-oriented conduct and/or advertising directed to consumers;

f. Whether Defendant knew that the Products contained allulose and that the Products did not conform to the Zero Sugar Representations;

g. Whether the Zero Sugar Representations were material and likely to mislead a reasonable consumer acting reasonably under the circumstances;

h. Whether Defendant's conduct violated the Consumer Protection Procedures Act, D.C. Code § 28.3901 *et seq.*;

i. Whether Defendant's conduct caused economic injury to purchasers of the Products and the appropriate method for measuring such injury; and

j. Whether Plaintiff and Class Members are entitled to actual damages or statutory damages and, if so, in what amount.

85. Plaintiff's claims are typical of the claims of the Class members he seeks to represent. Plaintiff, like the Class members, purchased Defendant's Products labeled with Defendant's deceptive Zero Sugar Representations. Plaintiff purchased the Products during the applicable class period and was exposed to the same challenged Zero Sugar Representations. Plaintiff suffered the same type of economic loss as the other Class members. Plaintiff's and the Class members' claims are based on the same legal theories and arise from the same course of conduct by Defendant.

86. Plaintiff is an adequate representative because he has no interests adverse to those of the Class, is committed to the vigorous prosecution of this action, and has retained skilled and experienced counsel. Plaintiff will fairly and adequately represent and protect the interests of the Class as required by D.C. Super. Ct. R. Civ. P 23(a)(4).

87. This action is maintainable as a class action under D.C. Super. Ct. R. Civ. P. 23(b)(3). A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action. Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior because the common issues can be resolved through common evidence and a single adjudication. Individual joinder of all Class members is impracticable, and no other available method of adjudication would provide a more efficient or consistent means of resolving the claims asserted herein. The prerequisites to maintaining this action pursuant to D.C. Super. Ct. R. Civ. P 23(b)(3) are satisfied for at least the following reasons:

a. The central issues in this action, including whether the Products contain allulose, whether allulose constitutes sugar under the applicable laws and regulations, what Defendant represented concerning the Products' sugar content, whether those

representations were false or misleading, whether Defendant knew the Products did not conform to those representations, and whether Defendant's conduct violated the applicable consumer-protection statutes, are common to the Class and predominate over any individual questions;

b. The Zero Sugar Representations were disseminated to consumers through common labeling, packaging, advertising, and marketing materials, such that the principal evidence concerning Defendant's conduct, the content of the representations, and their alleged falsity or misleading nature will be common to the Class;

c. To the extent individual issues exist concerning the circumstances of particular purchases, such issues do not predominate over the common questions because liability will principally turn on Defendant's uniform conduct, the Products' characteristics, the Defendant's representations, and the applicable law;

d. The economic injury alleged by Plaintiff and the Class arises from the same alleged misconduct and can be established through common evidence and a common methodology. Individual differences, if any, in the amount paid, purchase date, quantity purchased, or resulting monetary recovery do not defeat predominance where the existence and methodology of the alleged injury can be established through common proof;

e. Given the relatively modest value of individual Class members' claims compared with the cost and burden of individual litigation, many Class members would have little incentive or ability to pursue their claims individually. A class action therefore provides an effective mechanism for Class members to obtain relief for alleged injuries that might otherwise go unremedied;

f. Class members have no substantial interest in individually controlling the prosecution of separate actions because the claims arise from Defendant's common course of conduct and present substantially overlapping factual and legal issues;

g. Concentrating the claims in a single proceeding is desirable because the alleged misconduct involves common Products, common representations, common labeling and marketing practices, and common questions concerning Defendant's conduct. A single proceeding will promote consistent adjudication of those issues and avoid unnecessary duplication of discovery, motion practice, expert testimony, and trial proceedings;

h. Individual litigation would create a substantial risk of inconsistent or varying adjudications concerning the same Products, Representations, and underlying conduct. Class-wide adjudication will promote consistency and judicial economy;

i. There are no pending individual actions known to Plaintiffs that would make separate adjudication a preferable method of resolving the controversy, and concentrating the claims in this forum is desirable and efficient; and

j. This action is manageable as a class action because the central liability issues are capable of resolution through common evidence and because any individualized issues concerning damages or other forms of relief can be addressed through appropriate class-wide methodologies, claim procedures, or other case-management mechanisms ordered by the Court.

**COUNT ONE**
**Violation of the District of Columbia Consumer Protection Procedures Act**
**D.C. Code § 28-3901 *et seq.***

88. Plaintiff restates and realleges the preceding allegations set forth in paragraphs 1 through 87 as though fully set forth herein.

89. This cause of action is brought pursuant to the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28.3901 *et seq*., on behalf of Corey Williams and the Class, who purchased the Products in the District of Columbia within the applicable limitations period.

90. D.C. Code § 28-3904 declares it a violation of the Consumer Protection Procedures Act to engage in any unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged.

91. Under D.C. Code § 28-3904(a), it is an unfair or deceptive trade practice to represent that goods "have . . . characteristics, ingredients, uses, benefits, quantities or quantities that they do not have." It is also an unfair or deceptive trade practice to represent that goods "are of a particular standard, quality, or grade" when they are of another. D.C. Code § 28-3904(d). It is also an unfair or deceptive trade practice to "misrepresent as to any material fact which has a tendency to mislead." D.C. Code § 28-3904(e).

92. Each of Defendant's Zero Sugar Representations is a representation within the meaning of all of the above subsections because each state that the Products contain "ZERO SUGAR" when, in fact, upon information and belief, the Products contain a substantial quantity of allulose per serving. Allulose is a sugar. By making that representation, Defendant misrepresented that the Products possessed characteristics, ingredients, quantities, and qualities that they did not have and that they were of a particular standard or quality when they were of

another. Additionally, the Zero Sugar Representations are misrepresentations as to a material fact (the sugar content of the Products) that have a tendency to mislead consumers, because a reasonable consumer would understand "ZERO SUGAR" to mean that the Products contain no sugar of any kind.

93. Corey Williams and each member of the Class purchased the Products for personal, family, or household purposes and not for resale. Each purchase was a consumer transaction within the definitions of the District of Columbia Consumer Protection Procedures Act.

94. Allulose is a monosaccharide and therefore a sugar under 21 C.F.R. § 101.9(c)(6)(ii). Allulose is the second-listed ingredient in the Products, and the Products contain a substantial amount of allulose per serving. The Products therefore did not possess the represented "ZERO SUGAR" characteristic or quality.

95. D.C. Mun. Regs. tit. 25-B, § 3602 provides that food is misbranded if "its labeling is false or misleading." D.C. Municipal Regulation Title 25-A, § 1102 incorporates the FDA's food-labeling rules, including 21 C.F.R. Part 101. The Products do not comply with 21 C.F.R. § 101.60(c)(1), which prohibits a "zero sugar," "sugar free" or substantially similar nutrient-content claim where the food contains 0.5 grams or more of sugars, as defined in § 101.9(c)(6)(ii), per labeled serving. The Products are therefore misbranded under applicable District of Columbia law.

96. The Zero Sugar Representations were material and had a tendency to mislead consumers acting reasonably under the circumstances. An ordinary consumer would understand "ZERO SUGAR" or "sugar free" to mean that the Products contained no sugar.

97. Before making each of his purchases, Corey Williams was presented with the Zero Sugar Representations displayed on the Products' packaging and Amazon.com product listing.

98. Corey Williams and the Class suffered ascertainable losses as a result of Defendant's unlawful trade practices. They paid a price premium for Products represented as containing no sugar. Defendant charges a higher per-ounce price for its Welch's Zero Sugar Fruity Bites than for comparable Welch's fruit snacks products that are not represented as containing zero sugar. Had Defendant accurately labeled the Products, Corey Williams and members of the Class would have paid less for the Products.

99. The ascertainable loss of the Class is a premium-price loss. Defendant's Zero Sugar Representations inflated the market price of the Products, and Corey Williams and members of the Class paid more for the Products than they otherwise would have paid.

100. Under D.C. Code § 28-3905(k)(1)(A), an individual may, on behalf of himself and the general public, bring a claim under the Consumer Protection Practices Act for the use of a trade practice in violation of a law of the District. As alleged herein, Defendant has violated the law of the District by making false or misleading statements concerning the sugar content of the Products, in violation of D.C. Code § 28-3904(a), (d), and (e) and by selling Products that are misbranded under D.C. Municipal Regulations Title 25-B, § 3602 and Title 25-A, § 1102, which incorporate the food-labeling requirements of 21 C.F.R. Part 101, including 21 C.F.R. § 101.60(c)(1).

101. Pursuant to D.C. Code § 28-3905(k)(2)(A), Corey Williams and the Class seek treble damages or statutory damages of $1,500, whichever is greater, for Defendant's violations, recoverable on a classwide basis. Corey Williams and the Class also seek punitive damages pursuant to D.C. Code § 28-3905(k)(2)(C), recoverable on a classwide basis. Corey Williams and the Class also seek reasonable attorneys' fees and costs to the extent authorized by applicable law, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in their favor and against Defendant and grant the following relief:

a) For an order certifying the proposed Class pursuant to D.C. Super. Ct. R. Civ. P 23, appointing Corey Williams as Class Representative, and appointing Plaintiffs' counsel as Class Counsel, as appropriate;

b) For a declaration that Defendant's conduct, as alleged herein, violates the District of Columbia Consumer Protection Procedures Act, and each other applicable statute referenced in this Complaint;

c) For a declaration that Defendant's labeling, packaging, marketing, distribution, and sale of the Products using the Zero Sugar Representations is false, deceptive, misleading, and/or otherwise unlawful, as applicable under the asserted causes of action;

d) For actual, compensatory, statutory, enhanced, treble, punitive, and/or other monetary relief available under the asserted causes of action, including damages under the District of Columbia Consumer Protection Procedures Act, in amounts to be determined at trial or otherwise permitted by applicable law;

e) For pre-judgment and post-judgment interest on all amounts awarded, to the extent permitted by applicable law;

f) For an order awarding Plaintiff and the Class members reasonable attorneys' fees, costs, and expenses to the extent authorized by applicable law; and

g) For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: September 11, 2026

Respectfully submitted,

/s/ *James L. Kauffman*

James L. Kauffman (DC Bar No. 1020720)
BAILEY & GLASSER LLP
1055 Thomas Jefferson St, NW, Suite 540
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 463-2103
jkauffman@baileyglasser.com

*Attorneys for Plaintiff*

# EXHIBIT H

**GABRIELLI LEVITT LLP**
2426 EASTCHESTER ROAD • SUITE 201 • BRONX, NEW YORK 10469
PHONE (718) 708-5322 • FAX (718) 708-5966
E-MAIL: michael@gabriellilaw.com. • WWW: www.gabriellilaw.com

September 2, 2026

**VIA PRIORITY MAIL**

PIM Brands, Inc.
d/b/a Welch's
One PIM Plaza
Park Ridge, NJ 07656

**Re:** ***Giganti v. PIM Brands, Inc. d/b/a Welch's***
**Welch's Zero Sugar Fruity Bites– Notice & Demand for Corrective Action Under NY General Business Law §§ 349 & 350**

To Whom It May Concern:

On behalf of our client, Paula Giganti, and a class of similarly situated persons, I am writing to advise you that PIM Brands, Inc. d/b/a Welch's ("PIM," "Welch's" or "Defendant"), has violated and continues to violate New York General Business Law ("GBL") §§ 349 and 350, and other laws, including, but not limited to, state express and implied warranty and unjust enrichment laws, by misleading consumers about the nature of certain fruit snacks (the "Product" or "Products")[1] that are sold under the "Welch's" brand name with representations that the Products contain "Zero Sugar" and "0g Sugars."

More specifically, PIM is engaging in false, deceptive and misleading acts and practices because the Products contain allulose, a sugar found in figs, raisins, maple syrup, and molasses, and, chemically, a monosaccharide, i.e., a simple sugar with the same molecular formula as fructose.[2]

As you are likely aware, a company may not make a false or misleading statement on its labeling.[3] More specifically, under 21 C.F.R. § 101.13(i)(3), a food may not be labeled with "a statement about the amount or percentage of a nutrient - for example 0g sugar - if the claim is "false or misleading in any respect."

The "0g Sugars" claim here is false and misleading. "Sugars" are defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."[4] Allulose is a free monosaccharide and

---

[1] "Product" or "Products" means all variations of Welch's Zero Sugar Fruity Bites that are labeled as containing "Zero Sugar" and/or "0g Sugars" and include allulose as an ingredient. Discovery may demonstrate that additional Welch's products are within the scope of our client's claim.

[2] Cleveland Clinic Health Essentials, *What Is Allulose?*, https://health.clevelandclinic.org/what-is-allulose; *see also* https://www.lakanto.com/pages/all-about-allulose-sweetener? ("Allulose is a type of sugar that resembles fructose, which is the sugar that occurs naturally in fruit."); *A Clinical Study on the Effect of Allulose, a Low-Calorie Sugar, on in vivo Dental Plaque pH*, The Forsyth Inst., at p. 6 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar") (2018).

[3] 21 U.S.C. § 343(a)(1).

therefore a sugar. Claiming a product contains "0g Sugars" when they contain allulose is therefore false and misleading under the relevant regulations.

This is no longer an open question. In *Franco v. Chobani, LLC*, the Seventh Circuit held that allulose is a sugar under the governing federal regulation, that state-law claims enforcing these identical standards are not preempted, and that a "zero sugar" label on a product containing four grams of allulose per serving plausibly deceives reasonable consumers. The FDA itself, appearing as amicus at the court's invitation, answered the question directly: "yes" - allulose is a "sugar" as that term is defined at 21 C.F.R. §101.9(c)(6)(ii).[5]

PIM's Products include allulose - a sugar - and therefore cannot claim to contain "Zero Sugar" and/or "0g sugars." PIM has deceived the public and has charged a premium for it. Consumers paid for "Zero Sugar" and "0g sugars" and received sugar. They were deprived of the benefit of their bargain: they would not have purchased the Products, or would have paid substantially less for them, had they known the truth. As such, our client and Class members have been financially injured.

Accordingly, this is a straightforward case. PIM has sold millions of containers of fruit snacks to unsuspecting consumers by telling them that it has "Zero Sugar" and "0g sugar." As it turns out, however, the products actually contain quite a lot of sugar. Selling consumers a food product that is intentionally mislabeled and intended to deceive them violates a whole host of laws, including consumer fraud and false advertising laws that have been enacted by state legislatures across the country.

In short, there is no such thing as "zero sugar" allulose; it does not exist. To peddle this contradiction in terms, PIM deceived the public through misleading packaging statements and labels. This deception earned them many millions of dollars, while doing substantial damage to a broad class of consumers across the country.

## Demand for Corrective Action

PIM's practice of representing that the Products contain "Zero Sugar" and "0g Sugars" while containing allulose, a simple sugar with the same molecular formula as fructose, amounts to breach of express warranty, fraudulent concealment and unjust enrichment. As such, this letter serves as a notice and demand for corrective action, pursuant to GBL §§ 349 and 350, on behalf of our client and all other persons similarly situated. Our client will file the enclosed Class Action Complaint unless PIM does the following within 30 days:

- Remove and refrain from using allulose in the Products or otherwise refrain from making the above-described representations on the Products' packaging, websites or social media;
- Identify all consumers similarly situated to our client, *i.e.*, all persons who purchased the Products within the past three years to date, or make reasonable efforts to identify such consumers;
- Notify all consumers so identified that, upon their request, PIM will refund to the consumers the price they paid for the Products;
- Give any such requested remedy to the consumers in a reasonable amount of time; and

---

[4] 21 C.F.R. § 101.9(c)(6)(ii).
[5] Brief for the United States as Amicus Curiae at 2, 24, *Franco v. Chobani, LLC*, No. 25-2087 (7th Cir. June 29, 2026).

- Immediately cease from engaging in the above complained of methods, acts, or practices, or if immediate cessation is impossible or unreasonably expensive under the circumstances, then cease from engaging within a reasonable time, to the extent that the Products are still in circulation.

If PIM fails to comply with this request within thirty (30) days, it may be liable for the following monetary amounts under GBL §§ 349 and 350:

- Actual damages suffered;
- Restitution of property;
- An order enjoining the methods, acts, practices, to the extent that the Products are still in circulation;
- Treble damages up to $1,000 per violation; and
- Costs and attorneys' fees related to the suit.

I hope, however, that PIM will choose to correct the unlawful practices described above promptly. A failure to act within thirty days will be considered a denial of this claim and my client will act accordingly.

<u>Preservation Request</u>

This letter also constitutes notice to PIM that it is not to destroy, conceal or alter in any manner whatsoever any evidence, documents, merchandise, information, paper or electronically stored information or data, and/or other tangible items or property potentially discoverable in the above-referenced matter, including but not limited to documents that relate to the Products, since their inception, such as:

- All documents relating to the manufacturing process for the Products;
- All documents, communications and electronically stored information concerning the manufacturing and development of the Products;
- All documents, communications and electronically stored information concerning the ingredients of the Products;
- All communications with any U.S. administrative entity, or industry self-regulation organization, or complaints by any private person or entity concerning the research and development, manufacturing, marketing, advertising and sales of the Products;
- All documents, communications and electronically stored information concerning the advertisement, marketing, labeling and packaging of the Products, including any market research, consumer surveys and focus groups;
- All documents, communications and electronically stored information, concerning the distribution and sale of the Products; and
- All communications with customers concerning complaints or comments related to the Products and their advertising, labeling and packaging.

If would like to discuss the issues raised in this letter and explore how they may be resolved without court intervention, please call me at (718) 708-5322. Otherwise, we look forward to PIM immediately changing its practices and compensating the above-identified individuals.

Very Truly Yours,
Gabrielli Levitt LLP

By:____________________
Michael J. Gabrielli, Esq.

Enclosures

**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Road, Suite 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAULA GIGANTI , individually and on behalf of other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>PIM BRANDS, INC. d/b/a WELCH'S,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Paula Giganti, a New York resident ("Plaintiff"), individually and on behalf of other similarly situated individuals, alleges the following Class Action Complaint against Defendant, PIM Brands, Inc. d/b/a Welch's ("PIM," "Welch's" or "Defendant"), upon personal knowledge as to herself and her own acts and upon information and belief as to all other matters, based upon, inter alia, the investigation made by her attorneys – as to all other matters, as follows:

## INTRODUCTION

1. This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing of its line of fruit snacks (the "Product" or "Products")[1] that are sold with representations that the Products contain "Zero Sugar" and "0g Sugars."

2. Defendant's "Zero Sugar" and "0g Sugars" representations are false, deceptive and misleading because the Products contain allulose, a sugar found in figs, raisins, maple syrup, and molasses, and, chemically, a

[1] Product" or "Products" means all variations of Welch's Zero Sugar Fruity Bites that are labeled as containing "Zero Sugar" and/or "0g Sugars" and include allulose as an ingredient. Discovery may demonstrate that additional Welch's products are within the scope of this Complaint.

monosaccharide, i.e., a simple sugar with the same molecular formula as fructose.[2]

3. Not only is this false and misleading to reasonable consumers, but federal law also forbids this labeling. As a general matter, a company may not make a false or misleading statement on its labeling.[3] More specifically, under 21 C.F.R. § 101.13(i)(3), a food may not be labeled with "a statement about the amount or percentage of a nutrient - for example 0g sugar - if the claim is "false or misleading in any respect ."

4. The "0g Sugars" claim here is false and misleading. "Sugars" are defined as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."[4] Allulose is a free monosaccharide and therefore a sugar. Claiming your Products contain "0g Sugar" when they contain allulose is therefore false and misleading under the relevant regulations.

5. This is no longer an open question. In *Franco v. Chobani, LLC*, the Seventh Circuit held that allulose is a sugar under the governing federal regulation, that state-law claims enforcing these identical standards re not preempted, and that a "zero sugar" label on a product containing four grams of allulose per serving plausibly deceives reasonable consumers. The FDA itself, appearing as amicus at the court's invitation, answered the question directly: "yes" - allulose is a "sugar" as that term is defined at 21 C.F.R. §101.9(c)(6)(ii).[5]

6. Defendant's Products include allulose - a sugar - and therefore cannot claim to contain "0g sugar." Defendant has deceived the public and has charged a premium for it. Consumers paid for "Zero Sugar" and "0g Sugars" and received sugar. They were deprived of the benefit of their bargain: they would not have purchased the Products, or would have paid substantially less for them, had they known the truth. As such, Plaintiff and Class members have been financially injured.

7. As such, this is a straightforward case. Defendant has sold millions of containers of fruit snacks to unsuspecting consumers by telling them that it has "Zero Sugar" and "0g Sugars." As it turns out, however, the Products contain quite a lot of sugar. Selling consumers a food product that is intentionally mislabeled and intended

---

[2] Cleveland Clinic Health Essentials, *What Is Allulose?*, https://health.clevelandclinic.org/what-is-allulose; *see also* https://www.lakanto.com/pages/all-about-allulose-sweetener? ("Allulose is a type of sugar that resembles fructose, which is the sugar that occurs naturally in fruit."); *A Clinical Study on the Effect of Allulose, a Low-Calorie Sugar, on in vivo Dental Plaque pH*, The Forsyth Inst., at p. 6 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar") (2018).

[3] 21 U.S.C. § 343(a)(1).

[4] 21 C.F.R. § 101.9(c)(6)(ii).

[5] Brief for the United States as Amicus Curiae at 2, 24, *Franco v. Chobani, LLC*, No. 25-2087 (7th Cir. June 29, 2026).

to deceive them violates a whole host of laws, including consumer fraud and false advertising laws that have been enacted by state legislatures across the country.

8. There is no such thing as "zero sugar" allulose; it does not exist. To peddle this contradiction in terms, Defendant deceived the public through misleading packaging statements and labels. This deception earned them many millions of dollars, while doing substantial damage to a broad class of consumers across the country.

9. Defendant's conduct violated and continues to violate New York General Business Law §§ 349 and 350. Defendant breached and continues to breach their express warranties regarding the Products. Accordingly, Plaintiff brings this action against Defendant on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## JURISDICTION AND VENUE

10. This Court has original jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332, as amended in 2005 by the Class Action Fairness Act. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds $5,000,000, exclusive of interest and costs; and (2) a substantial number of the members of the proposed class are citizens of a state different from that of Defendant, a corporate entity having a principal place of business in Park Ridge, New Jersey.

11. This Court has personal jurisdiction over Defendant because it regularly conducts business in this District and purposefully avails itself of the laws of New York to market, promote, distribute, and sell the Products to consumers in New York and this District. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including New York State. Defendant is authorized to do business in New York State, and Defendant has sufficient contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within New York State.

12. Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of the Products, occurred within this District.

## PARTIES

13. This is a nationwide consumer class action brought by Plaintiff on behalf of all individuals who purchased the Products for personal use and not for resale.

14. During the relevant period, Class Members in New York and throughout the United States purchased the Products through numerous brick-and-mortar retail locations and online websites. Plaintiff and Class Members suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices set forth in this Complaint.

15. Plaintiff is a resident of Westchester County, New York. During the applicable statute of limitations period, Plaintiff purchased Defendant's Products on multiple occasions at a CVS pharmacy located in New Rochelle, New York.

16. Plaintiff purchased Defendant's Products because she saw the labeling, advertising, and read the packaging, which represented that the products contain "Zero Sugar" and "0g Sugars." Had she known the truth—that the representations she relied upon in making her purchases were false, misleading, and deceptive—she would not have purchased the Products at a premium price.

17. Defendant's statements are false and misleading to a reasonable consumer because, as set forth more fully herein, the Products contain allulose, a simple sugar with the same molecular formula as fructose.

18. Plaintiff would purchase the Products again. Plaintiff enjoys the Products and continues to seek fruit snacks that contain no sugar. Plaintiff would buy the Products in the future if she could trust that the "Zero Sugar" and "0g Sugars" representations are accurate. But Plaintiff cannot rely on those representations. Plaintiff has no insight into Defendant's formulation practices, which can change at any time without notice. Absent an injunction, Plaintiff will either be misled again or be forced to forgo purchasing Products she would otherwise buy. Plaintiff therefore faces a real and imminent threat of continuing and future harm.

19. Defendant, PIM, is a corporation headquartered in Park Ridge, New Jersey.

20. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## SUBSTANTIVE ALLEGATIONS

### Defendant Has Deceptively Marketed and Labeled The Products Across the Entirety of the United States

21. As set forth in more detail below, Defendant has engaged in a nationwide scheme to deceive consumers by selling them "Zero Sugar" fruit snacks that are actually made by adding sugar as a sweetener.

22. This deception was carried out intentionally in a bid to enrich PIM and its owners.

DRAFT

23. And it largely worked; consumers across the country have been deceived into purchasing the Products based on the reasonable belief that they contain "zero sugar." These consumers reasonably relied on Defendant's deceptive product labels and statements, and suffered damage because they were cheated out of the benefit of the bargain they believed they were making when purchasing the product.

24. This is all a complete deception. In fact, Welch's Zero Sugar Fruity Bites are sweetened by adding allulose to the snacks.

**A. What is Allulose?**

25. Allulose is a naturally occurring sugar that sweetens things like raisins, maple syrup and brown sugar.[6]

26. Chemically, allulose is a monosaccharide epimer of fructose.

27. Allulose and fructose are both sugar carbohydrates that differ in the position of a single carbon atom.

28. As a monosaccharide, it falls squarely within the Food and Drug Administration ("FDA")'s codified definition of sugar.[7]

29. Consistent with that regulatory definition, the FDA for years required allulose to be included in labeling declarations for Total Sugars, and Added Sugars.[8]

30. The FDA is not the only organization that recognizes that allulose is a sugar. Tate & Lyle, the ingredient manufacturer responsible for the production of most commercial grade allulose,[9] has acknowledged in multiple FDA filings that "[a]llulose is a monosaccharide and is classified as a sugar." *See*, 4.10.15 Tate & Lyle Petition[10]; *see also*, 8.13.18 Tate & Lyle Study[11] ("Allulose is a monosaccharide, or simple sugar, that naturally

---

[6] A Clinical Study on the Effect of Allulose, a Low-Calorie Sugar, on in vivo Dental Plaque pH, The Forsyth Inst., at p. 6 ("Allulose is a monosaccharide, or simple sugar, that naturally presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar") (2018).

[7] 21 C.F.R. 101.9(c)(6)(ii).

[8] U.S. Food & Drug Ass'n, FDA Issues Draft Guidance Regarding the Declaration of Allulose on the Nutrition Facts Label, FDA.gov, Constituent Update, April 17, 2019.

[9] Tate & Lyle's "Customer Innovation and Collaboration Centre" is in Hoffman Estates, outside Chicago, Illinois. This Illinois location is the "global headquarters of the Primary Products division" of Tate & Lyle, as well as its "North American headquarters for [its] Food & Beverage Solutions division." https://www.tateandlyle.com/contact-us.

[10] Citizen Petition Submitted by Tate & Lyle *Ingredients Americas LLC requesting that Allulose be Exempt From Being Included As a Carbohydrate, Sugar, or Added Sugar in the Nutrition Facts Label on Foods and Beverages*, April 10, 2015, Docket Number FDA-2015-P-1201

DRAFT

presents in small quantities in fruits like figs and raisins and a variety of sweet foods like caramel sauce, maple syrup and brown sugar.")

31. Allulose is not merely a sugar as a matter of chemical classification; it is used as one. Because allulose has only approximately 70% of sucrose's sweetness, it cannot do its job in the trace quantities typical of high-intensity sweeteners such as sucralose, aspartame, and acesulfame potassium, which are 200 to 20,000 times as sweet as sucrose. Allulose must instead be used in larger scale quantities as a bulk sweetener - which is precisely why manufacturers often add multiple grams of it to each serving.[12]

32. Allulose also behaves like sugar in food: its solubility, water activity, and viscosity are similar to fructose, and it is "widely regarded as a promising substitute for sucrose" - that is, a substitute for table sugar that is itself a sugar.[13]

34. Even the website "allulose.org" plainly states that "Allulose (also called psicose) is a low-calorie sugar."[14]

35. Welch's Zero Sugar Fruity Bites with allulose is really just snacks sweetened with sugar; its very name is a lie.

**B. There Are Important Differences Between Consuming Allulose and Consuming "No Sugar"**

36. Allulose has become popular with food manufacturers recently because some preliminary research suggests that it may metabolize in some people's bodies differently than some other sugars.

37. However, there are important caveats and exceptions to this ongoing research.

38. For example, while some studies have concluded that allulose has less harmful effects on the blood glucose level of healthy people when ingested and metabolized, those studies have concluded that "dose difference of allulose may result in a different effect," "the effect may differ by race as well as gender," and "there might be a

---

[11] 8.13.18 Tate & Lyle Study Pg. 6, https://www.regulations.gov/document/FDA-2015-P-1201-0014).

[12] Maeng et al., supra note 2, at 2, 9-10; Youngji Han et al., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults*, 10 Nutrients art. 2010, at 1-2 (2018), https://doi.org/10.3390/nu10122010; Mengting Tao, Wenli Zhang & Wanmeng Mu, *d-Allulose: A New Generation of Potential Bulk Sweeteners in the Food Industry*, 73 J. Agric. & Food Chem. 27,833 (2025).

[13] Han et al., supra note 6, at 10 ("It is convenient for the food industry to use D-allulose, as its chemical properties are similar to those of fructose in terms of solubility, water activity, and viscosity."); Wenli Zhang et al., *D-Allulose, a Versatile Rare Sugar: Recent Biotechnological Advances and Challenges*, 63 Critical Revs. Food Sci. & Nutrition 5661 (2023).

[14] Calorie Control Council, Frequently Asked Questions, https://allulose.org/allulose-info/low-caloriesugar/.

difference between a liquid form and a solid form" of allulose.[15] Studies have concluded that further research is also needed to "factor into effects [of] the timing of an intake and its ratio of allulose in a meal"[16] and experts have concluded that "more research needs to be done."[17]

39. Consumption of allulose can also have gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[18]

40. A large clinical trial conducted on gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in "significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain."[19] Increasing the level of ingested allulose "resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms."[20]

**Plaintiffs' Claims Are Not Subject To Preemption Or Abstention**

41. Plaintiff is suing for violation of statutory state law because she was tricked into buying a Product deceptively labeled "Zero Sugar" and "0g Sugars" that is actually made by adding sugar as a sweetener.

42. Plaintiff is not suing for any violation of FDA regulations.

43. However, the deceptive labeling also violates federal laws and regulations regarding food labeling and packaging, such that Plaintiff's state law claims are not subject to any preemption.

**A. Federal Law Prohibits The Products' "Zero Sugar" and "0g Sugars" Labels**

44. Congress empowered the FDA to oversee and regulate food labeling by enacting the Food, Drug and Cosmetic Act, as amended by the Nutrition Label and Education Act. 21 U.S.C.A. § 301, et seq.

45. These statutes allow the FDA to enact and enforce formal regulations, which the FDA has codified at Title 21 C.F.R. § 100.1 et seq.

---

[15] Tani Yuma et al., *Allulose for the attenuation of postprandial blood glucose levels in healthy humans: A systematic review and meta-analysis*, 18 PLos One 4, (2023) https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0281150

[16] Id.

[17] Id.

[18] Memorandum from Center for Science in the Public Interest to Food and Drug Administration (June 17, 2019) https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf.

[19] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY, & Choi M.S., *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults. A Non-Randomized Controlled Trial*. Nutrients., 2018 Dec 19;10(12):2010. doi: 10.3390/nu10122010. PMID: 30572580; PMCID: PMC6315886.

[20] Id.

46. The FDA regulations draw a sharp distinction between two types of food label statements: (i) nutrition panel declarations and (ii) nutrient content claims.

47. The FDA has established the well-known "nutrition panel," and tightly controls exactly what declarations may, and may not, appear within the four walls of this panel.[21] None of Plaintiff's claims relate to or depend on any declaration made within the nutrition panel of the Products.

48. At issue in this case are the separate, deceptive, "nutrient content claims" that Defendant has displayed all over the packaging labels outside of the nutrition panel.

**B. The Products Are Misbranded Because The Labeling Contains Impermissible Nutrient Content Claims**

49. Nutrient content claims are statements that "expressly or implicitly characterize the level of a nutrient" such as sugar. 21 C.F.R. § 101.13(b).[22] The "Zero Sugar" and "0g Sugars" statements that appear on the Products' packaging are all nutrient content claims.

50. Nutrient content claims are strictly forbidden unless specifically allowed under FDA regulations.[23]

51. Expressed nutrient content claims, such as "0g Sugars," are permitted outside the Nutrition Facts panel only if, among other things, they are "not false or misleading in any respect."[24]

52. Defendant's "0g Sugars" statements are false and misleading. The regulations require the amount of sugar to be measured by the definition of "sugars" in 21 C.F.R. § 101.9(c)(6)(ii), which defines "Total Sugars" as "the sum of all free mono-and disaccharides (such as glucose, fructose, lactose, and sucrose)."[25]

---

[21] *See, e.g.* 21 C.F.R. § 101.9 56.

[22] By regulation, all declarations made within the nutrition panel are definitionally not nutrient content claims. 21 C.F.R. § 101.13(c) ("Information that is required or permitted by § 101.9 or § 101.36, as applicable, to be declared in nutrition labeling, and that appears as part of the nutrition label, is not a nutrient content claim and is not subject to the requirements of this section.") However, if a statement from inside the nutrition panel is repeated outside the nutrition panel, it then becomes a nutrient content claim and must adhere to the rules and regulations governing nutrient content claims. Id.

[23] 21 C.F.R. § 101.13 ("A claim that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D.").

[24] 21 C.F.R. § 101.13(i).

[25] *See id* § 101.13 (b) (a nutrient content claim characterizes a "nutrient of the type required to be in nutrition labeling under § 101.9); *id* § 101.13(o) (compliance with nutrient content claim requirements is "determined using the analytical methodology prescribed for determining compliance with nutrition labeling in § 101.9").

53. Allulose is a sugar under that definition, and the FDA has said so from the start. When it adopted the definition in 1993, the FDA expressly rejected comments urging it to define "sugars" by "physiological characteristics" "rather than the number of saccharide units,[26]" and in its 2016 Nutrition Facts rulemaking it stated that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration "pending any future rulemaking that would otherwise exclude" it.[27]

54. Most recently, in *Franco v. Chobani, LLC* - a class action challenging "zero sugar" yogurt sweetened with allulose - the Seventh Circuit resolved the question. The court invited the FDA to address "whether allulose is a 'sugar' as that term is defined at 21 C.F.R. § 101.9(c)(6)(ii)." The FDA's answer was "yes."[28]

55. The Seventh Circuit agreed, holding that the governing regulations are "plain" and that "sugars include every monosaccharide, including allulose."[29] Because the consumers sought to hold the manufacturer liable under state law for violating identical standards, their claims were not preempted.[30]

56. Measured that way, the amount of sugars in each Product is not zero grams. Each Product is sweetened with allulose, a sugar under 21 C.F.R. § 101.9(c)(6)(ii)). No disclaimer of any kind accompanies the statements. A "0g Sugars" claim on a product sweetened with sugar is false; at minimum, it is misleading, because it tells consumers the Products contain no sugar when they are, in fact sweetened with sugar. A food whose "labeling is false or misleading in any particular" is misbranded, independent of any other provision.[31]

57. Separately, the Products are misbranded under 21 U.S.C. § 343(r)(1)(A): their labels bear nutrient content claims that are not made in accordance with the regulations authorizing such claims, as alleged above. Misbranded food may not lawfully be introduced or delivered for introduction into interstate commerce.[32]

58. Plaintiff does not sue to enforce the FDCA. As outlined below, Plaintiff sues to enforce independently enforceable New York law that imposes requirements identical to the federal requirements. Because

---

[26] 58 Fed. Reg. 2,079, 2,098, 2,177 (Jan. 6, 1993).

[27] 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[28] Brief for the United States as Amicus Curiae at 2, 24, *Franco v. Chobani, LLC*, No. 25-2087 (7th Cir. June 29, 2026).

[29] *Franco v. Chobani, LLC*, - F.4th - 2026 WL 2150193, at *5 (7th Cir. July 27, 2026).

[30] *Id.*

[31] 21 U.S.C. § 343(a)(1).

[32] 21 U.S.C. § 331(a).

Plaintiff's state-law claims are based on the exact same deceptive nutrient content claims that render the Products misbranded under federal law, there is no conflict between the two regimes and no FDCA preemption of any kind.[33]

**C. The Products Contain A Significant Amount Of Allulose**

59. Within Subpart D, Subsection 101.60 specifically governs the use of the nutrient content claims "zero sugar" and "no sugar" at issue in this case.

60. Specifically, subsection 101.60(c)(1) of Subpart D lays out two requirements; they must both be satisfied in order to label a food "zero sugar" or "no sugar."

61. This regulation states that "a food may not be labeled with such terms unless:"

> "(i) The food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii), per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of sugars per labeled serving; and
>
> (ii) The food contains no ingredient that is a sugar or that is generally understood by consumers to contain sugars unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of sugar," "adds a negligible amount of sugar," or "adds a dietarily insignificant amount of sugar."[34]

62. Note that while Welch's Zero Sugar Fruity Bites violates both prongs of this test,[35] the requirements of 101.60(c)(1) are conjunctive, and a violation of the first prong is sufficient to defeat preemption.

63. While Defendant does not disclose the amount of allulose in the Products, Defendant's own label nonetheless establishes that each Product contains a significant amount of allulose.

64. Start with the rule: federal law requires ingredients to be listed in descending order of predominance by weight, so an ingredient listed earlier in an ingredient statement outweighs every ingredient listed after it.[36] Allulose is listed ahead of maltodextrin, modified corn starch, and gelatin. By Defendant's own ordering, the Products contain more allulose, by weight, than any of those ingredients.

---

[33] 21 U.S.C. § 343-1(a)(5).

[34] 21 C.F.R. § 101.60(c)(1)(i-ii).

[35] There is a yet another reason why Defendant's labeling is impermissible under federal law such there is no valid preemption defense. Pursuant to 21 CFR 101.13(f), all nutrient content claims "shall be in a type size no larger than two times the statement of identity and shall not be unduly prominent in type style compared to the statement of identity." Welch's Zero Sugar Fruity Bites label violates this requirement as well.

[36] 21 C.F.R. § 101.4(a)(1).

DRAFT

65. Despite the foregoing, the Products' ingredients lists do not reveal - and Defendant nowhere discloses - that allulose is a sugar. "Allulose" is not a household word. A shopper who noticed the unfamiliar term and wondered whether it might be sugar would be answered by the front of the same package: "Zero Sugar" and "0g Sugars." The label does not merely hide that the Products' sweetener is sugar - it affirmatively *teaches* consumers that it is not.

**Reasonable Consumers Are Deceived - and Cannot Discover the Truth**

66. The Representations communicate one thing to reasonable consumers: the Products contain no sugar. That is the plain and ordinary meaning of "Zero Sugar" and "0g Sugars." A reasonable interpretation of a label stating that a food has "0g sugars" is that the labeled food actually has zero grams of sugar.

67. "0g Sugars" is an absolute, objective, quantitative claim about a measurable physical attribute of the Products. It is a statement of fact - not puffery, not opinion, and not ambiguous.

68. Inspecting the ingredient list or other information presented by Defendant would not alert consumers to the truth, because Defendant nowhere discloses that allulose is a sugar. Moreover, allulose is not a common household name; in a 2021 marketing survey, only 15% of respondents had even heard of allulose - let alone knew that it was a sugar.[37]

69. The practical consequence of Defendant's labeling choices is that a consumer standing in the store - reading the front of the pack, the back of the pack, the ingredient statement, and even Defendant's website - encounters nothing, anywhere, revealing that the Products contain sugar. The deception cannot be discovered at the point of sale.

**The "Zero Sugar" and "0g Sugars" Representations Are Material – Consumers Seek Out, and Pay More for, Products Without Sugar**

70. The presence and amount of sugar in a food is material to reasonable consumers: it is information a reasonable person would attach importance to in deciding whether, and at what price, to purchase the Products.

71. Consumer demand for products without sugar is overwhelming and well documented. A 2022 nationwide survey found that 73% of Americans ages 18 to 80 reported trying to limit or avoid sugars in their diet.[38]

72. That demand accords with uniform public-health guidance. The World Health Organization recommends limiting free sugars to less than 10 percent of total daily energy intake - and states that limiting them to 5

---

[37] International Food Information Council, Perceptions and Use of Dietary Sweeteners (May 2021), https://foodinsight.org/wp-content/uploads/2021/05/IFIC-Sweeteners-Survey.May-2021.pdf.

[38] International Food Information Council, 2022 Food & Health Survey 57 (May 18, 2022), https://ific.org/wp-content/uploads/2022/06/IFIC-2022-Food-and-Health-Survey-Report-May2022.pdf.

percent or less would provide additional health benefits. The American Heart Association recommends limiting added sugars to no more than 6 percent of daily calories.[39]

73. Consumption of allulose can also have gastrointestinal effects such as nausea, bloating, diarrhea, and abdominal pain.[40] A large clinical trial on the gastrointestinal tolerance of allulose determined that, compared to traditional cane sugar, consumption of allulose resulted in "significantly higher frequencies of symptoms of diarrhea, abdominal distention, and abdominal pain." Increasing the level of ingested allulose "resulted in incidences of severe nausea, abdominal pain, headache, anorexia, and diarrheal symptoms."[41]

74. A consumer deciding whether to eat a snack sweetened with allulose is therefore deciding something that has direct health effects on their body. The Representations denied consumers that choice.

75. Food manufacturers are acutely aware of this demand and of the premium consumers will pay to satisfy it. Products labeled "sugar free" and "no sugar" command higher prices than comparable products without those claims, and manufacturers reserve the front principal display panel for the claims they believe will most motivate a purchase. Trading on consumers' well-known desire for sugar free products is a deliberate marketing strategy designed to capitalize on healthy-eating trends.

## CLASS ALLEGATIONS

76. Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

77. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated individuals within the United States (the "Class" or the "Nationwide Class"), defined as follows:

> All persons in the United States who purchased the Products during the applicable limitations period (the "Class Period"). Excluded from the Class are Defendant's officers and directors; members of the immediate families of Defendant's officers and directors; Defendant's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

[39] World Health Organization, Healthy Diet, https://www.who.int/news-room/fact-sheets/detail/healthy-diet; American Heart Association, Added Sugars, https://www.heart.org/en/healthy-living/healthy-eating/eat-smart/sugar/added-sugars.

[40] Memorandum from Center for Science in the Public Interest to Food and Drug Administration (June 17, 2019), https://cspinet.org/sites/default/files/attachment/allulose%20final%20from%20CSPI.pdf.

[41] Han Y, Choi BR, Kim SY, Kim SB, Kim YH, Kwon EY & Choi MS, *Gastrointestinal Tolerance of D-Allulose in Healthy and Young Adults: A Non-Randomized Controlled Trial*, 10 Nutrients 2010 (2018), https://doi.org/10.3390/nu10122010.

78. Additionally, Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all others similarly situated New York Citizens (the "New York Subclass"), defined as follows:

> All New York residents who purchased the Products in New York during the Class Period. Excluded from the Class are Defendant's officers and directors; members of the immediate families of Defendant's officers and directors; Defendant's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

79. Upon information and belief, the scope of the Class and Subclass definitions, including temporal scope, may be further refined after discovery of Defendant's and/or third party records.

80. The Class and the New York Subclass will be referred to collectively throughout the Complaint as the "Class."

81. All members of the Class were and are similarly affected by the deceptive advertising of the Defendant, and the relief sought herein is for the benefit of Plaintiff and members of the Class.

82. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

83. **Numerosity – Federal Rule of Civil Procedure 23(a)(l).** At this time, Plaintiff does not know the exact number of the Class and Subclass members. Based on the annual sales and popularity of the Products, it is readily apparent that the number of consumers in the Class is so large as to make joinder impracticable, if not impossible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

84. **Commonality and Predominance -Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

(a) whether Defendant misrepresented and/or failed to disclose material facts concerning the falsely labeled Products;

(b) whether allulose is a sugar;

(c) whether Defendant's conduct was unfair, misleading and/or deceptive; and

(d) whether Defendant breached an express warranty created through the labeling and marketing of its falsely labeled Products;

(e) whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and the Class suffered an ascertainable loss; and

(f) Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class Members.

85. With respect to the New York Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include:

(a) whether, in violation of § 349 of the New York General Business Law ("GBL"), Defendant engaged in deceptive acts or practices; and

(b) whether, in violation of GBL § 350, Defendant engaged in false advertising.

86. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of herself, and the other Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

87. Plaintiff's claims are typical of the claims of the Nationwide Class. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the Nationwide Class were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the Nationwide Class are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

88. Plaintiff's claims are typical of the claims of the New York Subclass. Plaintiff is a member of a well-defined class of similarly situated persons and the members of the New York Subclass were similarly affected by Defendant's conduct and are owed the same relief, as alleged in this Complaint. Members of the New York Subclass are ascertainable from Plaintiff's description of the class, Defendant's records, and records of third parties accessible through discovery.

89. **Adequacy of Representation - Federal Rule of Civil Procedure 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, and she has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff and her counsel will fairly and adequately protect the interests of the members of the Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

90. **Insufficiency of Separate Actions - Federal Rule of Civil Procedure 23(b)(l).** Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the

DRAFT

resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfies the requirements of Fed. R. Civ. P. 23(b)(l).

91. **Predominance and Superiority of Class Action.** The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class member predominates over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

92. Individual joinder of the Class members is not practicable, and questions of law and fact common to the Class predominate over any questions affecting only individual Class members. Each Class member has been damaged and is entitled to recovery as a result of the violations alleged herein.

93. Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

94. Defendant's conduct is generally applicable to the Class and the New York Subclass as a whole and Plaintiff seeks, inter alia, equitable remedies with respect to the Class and the New York Subclass as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Class and the New York Subclass as a whole appropriate.

95. Plaintiff is unaware of any difficulties in managing this case that should preclude class action.

## CAUSES OF ACTION

## COUNT I

**Violation of New York General Business Law § 349**
**(On Behalf of the New York Sub-Class)**

96. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

97. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

98. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary

damages, compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

99. There is no adequate remedy at law.

100. Defendant misleadingly, inaccurately, and deceptively presented its Products to consumers.

101. Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as containing no sugar, when in fact the Products are sweetened with allulose, a sugar—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

102. Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that were—contrary to Defendant's representations—not free from sugar. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

103. Defendant's advertising, including online advertising, and the Products' packaging and labeling induced the Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

104. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Sub-Class Members have been damaged thereby.

105. As a result of Defendant's recurring, unlawful deceptive acts and practices, Plaintiff and the New York Sub-Class Members are entitled to monetary, compensatory, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

THEREFORE, Plaintiff prays for relief as set forth below.

## <u>COUNT II</u>

### Violation of the New York General Business Law § 350 (On Behalf of the New York Sub-Class)

106. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

107. The acts of Defendant, as described above, and each of them, constitute unlawful, deceptive and fraudulent business acts and practices.

108. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

109. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

110. Plaintiff and the members of the New York Subclass are consumers who purchased the Products in New York.

111. As sellers of goods to the consuming public, Defendant is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

112. Defendant's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Defendant's advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

113. Defendant's false advertising was knowing and intentional.

114. Defendant's actions led to direct, foreseeable and proximate injury to Plaintiff and the New York Subclass.

115. As a consequence of Defendant's deceptive marketing scheme, Plaintiff and the other members of the New York Subclass suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the Products on different terms, or would otherwise purchase a competing product, and as a result of Defendant's conduct, they received products of less value than what they paid for.

116. By reason of the foregoing, Defendant is liable to Plaintiff and the other members of the New York Subclass for actual damages, injunctive relief, attorneys' fees, and the costs of this suit.

## COUNT III

**Breach of Express Warranty**
**(On Behalf of the Class)**

117. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

118. Defendant provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its falsely labeled Products were free from sugar.

119. These affirmations of fact or promises by Defendant relate to the goods and became part of the basis of the bargain.

DRAFT

120. Plaintiff and members of the Class purchased the falsely labeled Products believing them to conform to the express warranties.

121. Defendant breached these warranties. This breach resulted in damages to Plaintiff and other members of the Class, who bought the falsely labeled Products but did not receive the goods as warranted.

122. Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

123. Plaintiff, on behalf of herself and the Class, provided Defendant with pre-suit notice of its breach of the express warranties provided on the label of the Products.

124. By providing pre-suit notice, Plaintiff has effectively notified the Defendant of the troublesome nature of its transactions within a reasonable time of discovering the breach.

125. Despite providing the above notice to the Defendant that the Products do not meet Defendant's warranties and in fact fail in many respects to perform consistent with the Products' representations, Defendant continues to hide the facts from consumers and fails to correct the material misrepresentations regarding the Products.

126. Actual and/or constructive notice was duly given to Defendant of the breaches of these warranties, and Defendant has yet failed to cure.

127. As a proximate result of the breach of warranties by Defendant, Plaintiff and the other members of the Class did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and the Class members known the true facts, they would not have purchased the products, would have purchased fewer products, or would not have been willing to pay the premium price Defendant charged for the products.

## COUNT IV

**Intentional Misrepresentation/Fraud**
**(On Behalf of the Class)**

128. Plaintiff incorporates by reference all the allegations of the preceding paragraphs of this Complaint.

129. As alleged herein, Defendant made representations of material fact to Plaintiff and Class members concerning the sugar content of the Products, specifically the "Zero Sugar" and "0g Sugars" representations.

130. These representations were false and misleading. Defendant knew these representations were false and misleading when made, or made them with reckless disregard for their truth, because Defendant formulated the Products, selected allulose as a sweetening ingredient, and knew that allulose is a monosaccharide.

131. Defendant also actively concealed the material fact that allulose is a sugar, and affirmatively told consumers the opposite - assuring them that the Products contain "Zero Sugar" and "0g Sugars."

132. Defendant made these false representations and concealed material facts with the intent to defraud and induce Plaintiff and Class members to purchase the Products.

133. Plaintiff and Class members reasonably relied on Defendant's false representations and concealment when purchasing the Products.

134. As a direct and proximate result of Defendant's intentional misrepresentations and fraudulent concealment, Plaintiff and Class members suffered damages, including economic losses from purchasing the Products under false pretenses regarding their sugar content. Defendant's conduct was malicious, oppressive, or fraudulent, warranting an award of damages, including punitive damages.

## COUNT V

**Unjust Enrichment**
**(On Behalf of the Class)**

135. Plaintiff brings this claim individually and on behalf of members of the Class as an alternative to her Express Warranty Claim.

136. Plaintiff and the Class conferred a benefit on Defendant by purchasing the Products.

137. As set forth above, Defendant engaged in fraudulent conduct that misrepresented the Products as being free from sugar.

138. As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of its Products, Defendant was enriched, at the expense of Plaintiff and the Class members, through the payment of the purchase price for Defendant's Products.

139. Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from Plaintiff and the Class members in light of the fact that the Products purchased by Plaintiff and the Class members were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class members for the monies paid to Defendant for the Products.

140. By reason of the foregoing, Plaintiff and Class members are entitled to their actual damages in an amount to be determined at trial, with interest thereon, and disgorgement of all amounts by which Defendant has been unjustly enriched.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment on behalf of herself, the Nationwide Class and the New York Subclass, providing such relief as follows:

A. An order certifying the proposed Nationwide Class and the New York Subclass; appointing Plaintiff as representative of the Nationwide Class; appointing Plaintiff as representative of the New York Subclass; and appointing Plaintiff's undersigned counsel as Class counsel for the Class and Subclass;

B. A declaration that Defendant is financially responsible for notifying Class and Subclass members of the pendency of this suit;

C. An order requiring proper, complete, and accurate labeling of the Products;

D. An order declaring that Defendant's conduct violates the statutes and common law referenced herein;

E. An order finding in favor of the Plaintiff, the Class, and the New York Subclass on all counts asserted herein;

F. An order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

G. An order disgorging all amounts by which Defendant has been unjustly enriched;

H. An order awarding pre-judgment and post-judgment interest on all amounts awarded;

I. An order of restitution and all other forms of equitable monetary relief;

J. Declaratory and injunctive relief as pleaded or as the Court may deem proper;

K. An order awarding Plaintiff, the Class, and New York Subclass their reasonable attorneys' fees and expenses and costs of suit; and

L. An order awarding such other and further relief as the Court deems just and proper.

DRAFT

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED: ____________________, 2026

GABRIELLI LEVITT LLP

______________________
Michael J. Gabrielli (MG-2421)
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 201
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Counsel for Plaintiff and the Proposed Class*

DRAFT

# EXHIBIT I

CARNEY
BATES &
PULLIAM
PLLC

September 8, 2026

VIA CERTIFIED MAIL
P.I.M. BRANDS USA, INC
Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

Welch Foods Inc., A Cooperative
Corporation Service Company
84 State Street
Boston, MA 02109

Re: Notice of Claims Pursuant to Mass. Gen. Laws ch. 93A § 9

To whom it may concern:

I write this letter on behalf of our client, Eris Elliott. Please respond within 30 days.

Mr. Elliott is requesting relief under the provisions of Massachusetts General Laws ch. 93A. Massachusetts General Laws ch. 93A, § 2 prevents the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Massachusetts General Laws ch. 93A, § 9 provides:

> Any person ... who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two ... may bring an action in the superior court ... for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper ...
>
> Any persons entitled to bring such action may, if the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and if the court finds in a preliminary hearing that he adequately and fairly represents such other persons, bring the action on behalf of himself and such other similarly injured and situated persons.

Mr. Elliott contends that P.I.M. BRANDS USA, INC and Welch Foods Inc., A Cooperative ("Welch's"), is in violation of this statute through its practice of utilizing unfair and deceptive practices in labeling, marketing, and advertising its Welch's Zero Sugar Fruity Bites products (the "Products") as containing "ZERO SUGAR" when that is not the case.

In or about July 2026, Mr. Elliott saw the label of one of the Products which states the Product contains zero sugar. Mr. Priscella then proceeded to purchase Welch's Zero Sugar Fruity Bites, Mixed Fruit flavor. Mr. Elliott later learned that the Products contain Allulose, meaning they do contain sugar.

Mr. Elliott believes that Welch's advertising of the Products as containing zero sugar is a deceptive, fraudulent, and unfair scheme used by Welch's to sell the Products at a price that is approximately 300% higher than the price of the Welch's Fruit Snacks without the ZERO SUGAR advertisement. For example, Welch's Fruit Snacks (12 pack of 5 oz pouches of Mixed Fruit flavor) sell for $0.39 per ounce; Welch's Zero Sugar Fruity Bites (12 pack of 3 oz packages of Mixed Fruit flavor) sell for $1.18 per ounce.

Mr. Elliott and all similarly situated consumers who purchased the Products in the last 4 years (the "Class")—have been injured by Welch's violations of Massachusetts General Laws ch. 93A, § 9. Mr. Elliott and the Class have been harmed by Welch's deceptive advertising, which resulted in Mr. Elliott and the Class purchasing and paying a premium price for Products that did not possess the qualities as advertised.

On behalf of himself and each similarly situated purchaser of the Products, Mr. Elliott demands the greater of (a) statutory damages of $25 pursuant to Massachusetts General Laws ch. 93A § 9 or (b) damages in the amount of the purchase-price premium attributable to Welch's deceptive "ZERO SUGAR" representations. We further demand reasonable attorneys' fees and costs, and a reasonable incentive award for Mr. Elliott for services as the proposed representative of the Class.

Please note that if Welch's fails to accept the terms of this demand, given Welch's knows or should know that the practice complained of does in fact violate Massachusetts General Laws ch. 93A, §§ 2 & 9, and that Mr. Elliott and the Class are entitled to the relief demanded as a matter of law, KIND may be subject to double or treble damages under Massachusetts General Laws ch. 93A, § 9.

Mr. Elliott requires acceptance of this demand within 30 days. Otherwise, he will commence a civil lawsuit against Welch's based on the facts and claims in this letter.

Sincerely,

Courtney Ross Brown

Courtney Ross Brown

CERTIFIED MAIL

CARNEY BATES & PULLIAM PLLC
One Allied Drive
Suite 1400
Little Rock, AR
72202

7018 0680 0001 3220 1595

LITTLE ROCK AR 720
10 SEP 2026 AM 4

FIRST-CLASS

US POSTAGE IMI PITNEY BOWES

ZIP 72201
02 7H
0006145154

$ 010.98⁰
SEP 08 2026

Welch Foods Inc., A Cooperative
Corporation Service Company
84 State Street
Boston, MA 02109

02109-220060

# EXHIBIT J

CLARKSON LAW FIRM, P.C.
22525 PACIFIC COAST HIGHWAY
MALIBU, CA 90265

USPS APIs

09/14/2026
**U.S. POSTAGE**
$9.82
**LFP**

**USPS CERTIFIED MAIL™**

**9214 8903 9286 1600 1414 75**

5
1.12

CORPORATION SERVICE COMPANY
RE: WELCH FOODS INC., A COOPERATIVE
80 STATE ST
ALBANY NY 12207-2541

s

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CORPORATION SERVICE COMPANY
RE: WELCH FOODS INC., A COOPERATIVE
80 STATE STREET
Albany, NJ 12207

5

2.12

# Clarkson

**Confidential - Not Admissible by Defendants for Any Purpose; Cal. Evid. Code, §§ 1152, 1154; Fed. R. Evid. 408**

Bahar Sodaify, Esq.
Partner

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Direct: (213) 784-0489
Fax: (213) 788-4070
bsodaify@clarksonlawfirm.com

September 11, 2026

**VIA U.S. CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Corporation Service Company
Re: Welch Foods Inc., A Cooperative
80 State Street
Albany, NJ 12207

Michael Rosenberg, Reg. Agent
Re: PIM Brands LLC
One PIM Plaza
Park Ridge, NJ 07656

***Re: Welch's California Class Action Litigation***

To Whom It May Concern:

On behalf of Elizabeth Henriquez ("Plaintiff") and all others similarly situated,[1] this letter is to notify Welch Foods Inc., A Cooperative and PIM Brands LLC ("Defendants") that it has violated the California Consumers Legal Remedies Act ("CLRA") by employing or committing methods, acts, or practices declared unlawful by California Civil Code Section 1770. Pursuant to California Civil Code Section 1782(a), after thirty (30) days from the date of this notice, Plaintiff shall initiate an action against Defendants in a United States District Court or California Superior Court for injunctive relief and restitution damages. *See* Cal. Civ. Code § 1782(a)-(b). Further, this letter establishes a limited time period during which informal settlement of Plaintiff and the Class' claims may be accomplished. *Outboard Marine Corp. v. Sup. Ct.*, 52 Cal. App. 3d 30, 41 (1975). This letter also notifies Defendants of its duty to preserve information, documents, and things concerning the matters set forth in this letter in anticipation of litigation.

The unlawful acts and practices committed by Defendants in violation of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), (a)(9), and (a)(16), include the deceptive labeling, packaging, marketing, and advertising of all flavors and varieties of Welch's brand candy and fruit snacks manufactured with allulose that are advertised as containing "Zero Sugar," including, but not limited to, Welch's Mixed Fruit Zero Sugar Fruity Bites, Welch's Berries 'n Cherries Zero Sugar

[1] Plaintiff serves this notice on behalf of all persons who purchased the Product for personal use and not for resale in the United States (the "Class) or in the alternative California (the "California Subclass") within the last four (4) years or since the date of the Products' launch, whichever time period is shorter (the "Class Period").

Fruity Bites, and Welch's Island Fruits Zero Sugar Fruity Bites, and substantially similar products (collectively, the "Products").[2]

Defendants prominently label, market, and advertise the Products as "Zero Sugar" (the "Challenged Representation"). The Challenged Representation appears in large, conspicuous type on the principal display panel of every Product package. It is among the first things a consumer sees, and it is uniform across every flavor and variety of the Products. In reality, and unbeknownst to consumers, the Products contain sugar. They are sweetened with allulose — a monosaccharide, and a sugar under the FDA's own codified definition. A product sweetened with allulose is not a product containing zero sugar.

Consumers seek out and pay a premium for products they understand to contain no sugar, and they do so for various reasons, for instance: managing diabetes, insulin resistance, and other metabolic conditions; adhering to carbohydrate-restricted diets; and, in the case of parents purchasing snacks for their children, limiting a child's sugar intake. Defendants are well aware of this demand. That is why the Challenged Representation is on the front label, in the size and position it occupies.

Reasonable consumers, including Plaintiff, understood the Challenged Representation to mean what it says: that the Products contain no sugar of any kind. Plaintiff and other reasonable consumers saw the Challenged Representation on the front label of the Products before purchasing them, and relied on it in deciding to purchase. They did not receive the benefit of their bargain, and they paid a price premium for a product attribute the Products do not have.

Defendants' actions violate Sections 1770(a)(5), (a)(7), (a)(9), and (a)(16) of the CLRA. As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and members of the proposed Plaintiff Class purchased the Product, which they otherwise would not have purchased or would have paid less for but for Defendants' fraudulent representations and are therefore entitled to restitution in an amount to be determined at trial.

This letter outlines: (1) Defendants' false and misleading representations in connection with the Products; (2) the basis of Plaintiff's claims; (3) violation of the California Consumers Legal Remedies Act; and (4) Plaintiff's demand for relief.

---

[2] Plaintiff reserves the right to broaden her class definition and hereby puts Defendants on notice of similar violations with respect to, other similar products within Defendants' product lines. California courts have ruled that standing to pursue claims involving "substantially similar" products exists in circumstances such as these, i.e., similarity in products, claims, and injury to consumers. See, e.g., *Prescott v. Bayer HealthCare LLC*, 2020 U.S. Dist. LEXIS 136651, at *14-15 (N.D. Cal. July 31, 2020) (purchaser of mineral-based sunscreen lotion had standing to pursue claims related to unpurchased mineral-based sunscreen varieties because "the essence of each label is the same"); *Maisel v. S.C. Johnson & Son, Inc.*, 2021 U.S. Dist. LEXIS 86203, at *14-15 (N.D. Cal. May 5, 2021) (finding "substantial similarity even among diverse products" between purchased Ecover Dishwasher Tablets and 13 other cleaning products not purchased).

## I. DEFENDANTS' FALSE AND MISLEADING REPRESENTATIONS

The Products are labeled, advertised, and sold with the following representation: "Zero Sugar." This claim is found directly on the Products' front labels. Example images of the Products are shown below.




Welch's®
FAMILY FARMER OWNED
BERRIES 'N CHERRIES
ZERO SUGAR
FRUITY BITES
25% Fewer Calories Than Our Original Fruit Snacks
Chewy Not Sticky • Gluten Free
NET WT 3 OZ (85 g)
70
0
10
0

September 11, 2026
Page 5 of 10



Plaintiff purchased Welch's Zero Sugar Fruity Bites from a Walgreens in Los Angeles County, CA in 2026. Plaintiff's decision to purchase the Product was based, in part, on her understanding that, consistent with the Challenged Representation, it contained zero sugar. Plaintiff paid approximately $4 for the Product and would not have purchased it, or would have paid less, had she known it was not zero sugar. Plaintiff would consider purchasing the Product again in the future if she could be assured that it complies with California and federal consumer protection and labeling laws.

## II. BASIS OF PLAINTIFF'S CLAIMS

Sugar consumption is an increasing public concern because it is linked to the leading causes of death and disability in the United States. Heart disease is the leading cause of death for men, women, and most racial and ethnic groups; more than 919,000 people died of cardiovascular disease in 2023.[3] Diabetes, a disease defined by the body's inability to regulate blood sugar, affects an estimated 40.1 million people in the United States.[4] Excess sugar consumption is an established contributor to obesity, type 2 diabetes, and cardiovascular disease.[5] As a result, consumers have become increasingly health-conscious, and they are willing to pay a premium for products they believe to be free of, or low in, sugar. Defendants know this. It markets the Products precisely to capture that demand, and it places the "Zero Sugar" label prominently front and center of the Products' packaging for exactly that reason.

### A. The Products Contain Sugar

Allulose is a sugar. It is a monosaccharide epimer of fructose, that is, a simple sugar derived from fructose.[6] As a monosaccharide, allulose falls squarely within the FDA's codified definition of sugar. The agency's regulation defining "Total Sugars" reaches "all free mono- and disaccharides" in a food. 21 C.F.R. § 101.9(c)(6)(ii). Allulose is a monosaccharide. It is therefore a sugar under the binding regulation, and there is no such thing as "zero sugar" allulose: it is, by definition, a sugar.

### B. The FDA's 2020 Guidance Does Not Save Defendants' "Zero Sugar" Claim

Defendants cannot take refuge in the FDA's 2020 guidance on the Nutrition Facts panel, for at least three reasons.

First, the binding regulation has never changed. In 2016, in its Nutrition and Supplement Facts final rule, the FDA stated that allulose had to be declared on the Total Sugars line of the Nutrition Facts label.[7] In 2020, the FDA issued a non-binding recommendation that allulose need not be included in Total Sugars, based on a finding that it may function differently than other

[3] *Heart Disease Facts*, Centers for Disease Control & Prevention (Oct. 24, 2024), https://www.cdc.gov/heart-disease/data-research/facts-stats/index.html.
[4] *National Diabetes Statistics Report,* Centers for Disease Control & Prevention (Jan. 21, 2026), https://www.cdc.gov/diabetes/php/data-research/index.html.
[5] *Obesity, Sugar and Heart Health,* Johns Hopkins Med., https://www.hopkinsmedicine.org/health/wellness-and-prevention/obesity-sugar-and-heart-health
[6] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, Department of Health and Human Services, Food and Drug Administration, (May 27, 2016).
[7] Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,796 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101).

sugars, and announced that it would exercise enforcement discretion as to that exclusion.[8] But enforcement discretion is not a binding rule. Section 101.9(c)(6)(ii) remains controlling, and it still defines allulose as a sugar, rendering the Products' "Zero Sugar" representation false and deceptive.

Second, even on its own terms, the 2020 guidance addresses one thing only: whether allulose must be counted in the Total Sugars figure on the Nutrition Facts panel. It says nothing about front-of-package marketing. A decision not to require a number on the back of the box is not permission to print the opposite claim on the front. The guidance does not mean that products containing allulose may be labeled and advertised as having "zero sugar," or as having less sugar than the amount of allulose they actually contain.

Third, the Seventh Circuit has confirmed both points. In *Franco v. Chobani, LLC*, 184 F.4th 599 (7th Cir. 2026), the court held that allulose is a "sugar" under 21 C.F.R. § 101.9(c)(6)(ii), because that regulation's definition of "Total Sugars" encompasses all monosaccharides. It further held that the 2020 guidance is merely an announcement of enforcement discretion rather than an interpretation of the governing regulation, and is therefore owed no deference; the FDA's binding definition remains in force pending any future rulemaking. The FDA appeared as amicus curiae and took the position that the regulation unambiguously reaches all monosaccharides. On that basis, the court held that a plaintiff plausibly alleges deception where a product is marketed as "zero sugar" while containing allulose, and that such state-law claims are not preempted.

### C. Defendants' "Zero Sugar" Claim Violates Every Requirement Governing Such Claims

Far from being permitted, nutrient content claims such as "zero sugar" or "no sugar" are expressly forbidden unless specifically allowed by FDA regulation. The FDA imposes three requirements before a food may bear a "sugar free"-type claim:

1. The food must contain less than 0.5g of sugars per serving; **and**

2. The food must not contain any ingredient that is a sugar, unless that ingredient is followed by an asterisk referring to a statement beneath the ingredient list such as "adds a trivial amount of sugar"; **and**

3. The food is either labeled "low calorie" or "reduced calorie," or bears a relative claim of dietary usefulness; **or** the "sugar free" term is immediately accompanied, each time it is used, by the statement "not a reduced calorie food," "not a low calorie food," or "not for weight control."
   21 C.F.R. § 101.60(c)(1).

Defendants satisfy none of them. The Products contain allulose, a sugar, as the *second* ingredient, defeating the first and second requirements. That allulose appears without any asterisk or qualifying statement in the ingredient list, independently defeating the second. And the Products are not labeled "low calorie," nor is the "Zero Sugar" claim accompanied by any of the disclaimers the regulation requires, defeating the third.

---

[8] U.S. Food & Drug Admin., Center for Food Safety & Applied Nutrition, *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* (Oct. 2020), https://www.fda.gov/media/123342/download.

Defendants, in connection with its advertising and marketing of the Products, have violated California Civil Code Sections 1770(a)(5), (7), (9), and (16) by uniformly advertising and representing that the Products: (1) have characteristics, ingredients, uses, benefits, and quantities which they do not have; (2) are of a particular standard, quality, or grade, or are of a particular style, when they are of another; and (3) with the intent not to sell them as advertised.

## III. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT

Based on the foregoing, Defendants have violated and continue to violate California consumer protection statutes. Defendants have violated and continue to violate the CLRA. Specifically, in connection with the advertising, labeling, packaging, and marketing of the Products using the Challenged Representations, Defendants have violated the following subdivision of California Civil Code section 1770:

1. Representing that the Products have "sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it does not have" (Cal. Civ. Code, § 1770, subd. (a)(5));

2. Representing that the Products are of "a particular standard, quality, or grade," when it is of another (Cal. Civ. Code, § 1770, subd. (a)(7));

3. "Advertising goods [...] with the intent not to sell them as advertised" (Cal. Civ. Code, § 1770, subd. (a)(9)); and

4. Representing that the Products have been "supplied in accordance with a previous representation" when they have not (Cal. Civ. Code, § 1770, subd. (a)(16)).

Plaintiff and each member of the Class have been directly injured by Defendants' conduct in violation of the CLRA, as they would not have purchased the Products, or would have purchased it on different terms, had they known the truth about the Products. As a direct and proximate result of Defendants' conduct, Plaintiff and each member of the Class have suffered economic losses by purchasing the Products. Likewise, Defendants have unlawfully profited from its misconduct.

## IV. DEMAND FOR RELIEF

Pursuant to California Civil Code section 1782, subdivision (b), Plaintiff demands that Defendants agree to correct, repair, and rectify its unlawful acts within 30 days. In particular, Plaintiff demands that Defendants terminate its unlawful business practice as set forth herein. We also request that Defendants compensate Plaintiff for her attorneys' fees and costs pursuant to Civil Code section 1780, subdivision (e) and Code of Civil Procedure section 1021.5.

**Litigation Hold Notice:** This letter also constitutes notice to Defendants that it must NOT destroy, conceal, or alter in any manner whatsoever any evidence, documents, merchandise, information, paper, or electronically stored information or data (such as databases, emails, messages, electronically stored documents and things, websites, and any online advertisements), and/or other tangible items or property (collectively, "Documents") regarding the Products and the matters set forth in this letter, pending resolution of this dispute. This includes, but is not limited to, the following:

1. **Sales Data:** Documents related to the Products' sales in California and the United States in the last five years leading up to the Class Period through present, including

transactional sales data and compilations and analyses of sales, including buyer identities and contact information; unique product identification numbers, UPCs, and SKUs; Product descriptions; number of units sold; price per unit sold; MRSPs; date of each sale; and total dollar amount of each sale; in daily, weekly, monthly, quarterly, and annual sales periods.

2. **Inventory – Manufacture/Warehousing/Shipping Data:** Documents related to the manufacture, storage, warehousing, sale, and shipment of inventory, including unique product and lot identification numbers, and related dates tracking movement of inventory from manufacture to shipment.

3. **Manufacturing Process:** Documents related to the manufacturing process for the Products, including sourcing, processing, refining, and manufacturing of the ingredients and formulas.

4. **Consumer Identifying Information:** Documents reflecting the identities of consumers who bought the Products during the Class Period.

5. **Marketing & Advertising:** Documents related to the marketing, advertising, labeling, and packaging of the Products; similar products; and marketing claims similar to the Challenged Representations—be it Defendants' or any competitor or affiliate's marketing campaign and/or products, in the last five years leading up to the Class Period through present, including: advertisements in any medium; marketing strategies and campaigns; label/packaging schematics, mockups, blueprints, exemplars; data analytics, reports, and analyses for online marketing; materials submitted to marketers to substantiate claims; marketing budgets and performance evaluations; market research, including focus groups, consumer surveys, data analysis of consumer demographics and behavior; and any contracts, recommendations, reports, evaluations, or communications with any person regarding marketing and advertising.

6. **Product:** Documents related to the research, development, and testing of the Products, at any time in five years leading up to the Class Period through present, and any research, testing, publications, scientific literature, or other evidence that supports the truth of the Challenged Representations or otherwise relates to the Products. For any such research, Defendants must preserve all contracts, reports, raw data, findings, conclusions, recommendations, billing/time records, and communications with persons performing the research or related to the research.

7. **Complaints:** Documents related to any complaints or legal proceedings regarding the Products, at any time between 2010 to present, whether initiated by a governmental regulatory agency (such as the FTC or FDA), consumer competitor, or industry organization (such as the BBB, NAD, or NARB).

8. **Contracts:** Documents related to any agreement between Defendants or Defendants' representatives or agents and another person or entity to perform any services or provide any goods in connection with the foregoing matters.

9. **Policies & Procedures:** Documents related to any policies and procedures that govern, apply to, regard, or relate to any of the foregoing matters – be it policies and procedures created for or by Defendants, Defendants' representatives or agents, Defendants' independent contractors, or Defendants' principals, parent companies, grandparent

companies, or any other person or company that requires or suggests Defendants' compliance with them.

If you wish to discuss this matter prior to Plaintiff initiating formal litigation, please contact bsodaify@clarksonlawfirm.com. If we do not hear from you on or before October 13, 2026, then we, on behalf of Plaintiff and the proposed Class, will file our complaint forthwith.

Thank you for your attention to this matter.

Sincerely,

**CLARKSON LAW FIRM, P.C.**

Bahar Sodaify, Esq.

CERTIFIED MAIL ®